**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>NEW YORK LIFE INSURANCE COMPANY<br>     Defendant. | NO. 1:16-cv-03588 |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT, CONDITIONAL
CERTIFICATION OF CLASS, AND ENTRY OF SCHEDULING ORDER**

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ........................................................................................... iii

II.     STATEMENT OF FACTS ................................................................................ 2

       B.      The Settlement Terms ........................................................................... 4

           1.      The Settlement Class .................................................................. 4

           2.      Monetary Relief .......................................................................... 5

                a.      Named Plaintiff's incentive award ................................... 5

                b.      Attorneys' fees and litigation expenses ........................... 6

                c.      Administration costs ......................................................... 6

                d.      Settlement Class payments .............................................. 7

           3.      Non-monetary Relief ................................................................... 7

           4.      Scope of the Release ................................................................... 8

           5.      Notice to Appropriate Federal and State Officials ................... 11

           6.      Settlement Notice to Class Members ........................................ 11

III.    AUTHORITY AND ARGUMENT ................................................................. 12

       B.      Criteria for Settlement Approval ...................................................... 14

           1.      The settlement is the product of informed, non-collusive
                negotiations ............................................................................... 14

           2.      The settlement treats all class members fairly and raises no red
                flags .......................................................................................... 15

           3.      The settlement falls within the range of possible approval ....... 16

                a.      The stage of the proceedings and the amount of discovery
                    completed ....................................................................... 17

                b.      The risks of establishing liability and damages ........... 18

                c.      The length and expense of continued litigation ........... 18

                d.      The range of reasonableness of the settlement fund in light
                    of the best possible recovery and in light of all the attendant
                    risks of litigation ......................................................... 19

IV.     THE COURT SHOULD CERTIFY A SETTLEMENT CLASS ................... 21

           1.      Numerosity is satisfied ............................................................. 22

           2.      Commonality is satisfied ........................................................... 22

           3.      Plaintiff's claims are typical of the Settlement Class .............. 23

          4.      Plaintiff and their counsel will adequately represent the Settlement
                  Class ................................................................................................ 23
     B.     Rule 23(b)(3) ............................................................................................ 24
          1.      Common issues predominate ................................................................ 24
          2.      A class action is superior .................................................................... 25
V.     THE PROPOSED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND ............. 26
VI.    SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE ...................... 27
VII.   CONCLUSION ................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ...................................................25

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ..........................................................................................24

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................................29, 30

*In re Baldwin-United Corp.*,
105 F.R.D. 475 (S.D.N.Y. 1984) ............................................................................................18

*Chin v. RCN Corp.*,
No. 08-7349, 2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010)...................................................20

*Clark v. Ecolab, Inc.*,
04 Civ. 4488 (PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009).......................................17

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)......................................................................................................26

*Cubbage v. Talbots, Inc.*,
No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012)................................................................25

*Desai v. ADT Sec. Servs., Inc.*,
Case No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) ................................................................25

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...............................................................................................21, 22

*Erica P. John Fund, Inc. v. Halliburton*,
131 S. Ct. 2179 (2011)............................................................................................................28

*Estrada v. iYogi, Inc.*,
No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)............................25

*Fogarazzao v. Lehman Bros., Inc.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ............................................................................................27

*Franklin v. Wells Fargo Bank, N.A.*,
Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ...................24

*Garret, et al. v. Sharps Compliance, Inc.*,
   Case No. 1:10-cv-04030 (N.D. Ill. Feb. 23, 2012) .................................................25

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982)..........................................................................................30

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   114 F.R.D. 48 (S.D.N.Y. 1987) ...........................................................................29

*In re Gilat Satellite Networks, Ltd.*,
   No. 02 Civ. 1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)...........................18

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............23

*Ikuseghan v. MultiCare Health Sys.*,
   No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015)...................27

*Johansen v. GVN Michigan, Inc.*,
   No. 1:15-cv-00912, 2015 WL 3823036 (June 18, 2015) .........................................29

*Kalkstein v. Collecto, Inc.*,
   304 F.R.D. 114 (E.D.N.Y. Jan. 5, 2015) ..............................................................26

*Kaye v. Amicus Mediation & Arbitration*,
   300 F.R.D. 67 (D. Conn. 2014)............................................................................29

*Krakauer v. Dish Network L.L.C.*,
   311 F.R.D. 384 (M.D.N.C. 2015) ........................................................................27

*Kristensen v. Credit Payment Serv.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014) ....................................................................27

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................21

*Manouchehri v. Styles for Less, Inc.*,
   Case No. 14cv2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016)...............24

*McKenzie Constr. Inc. v. Maynard*,
   758 F.2d 97 (3d Cir. 1985)..................................................................................21

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009).................................................................................17

*Mey v. Pinnacle Sec., LLC*,
   No. 5:11CV47, 2012 WL 4009718 (N.D. W.Va. Sept. 12, 2012)..........................22

*In re Michael Milken & Assoc. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ...............................................................19

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) .........................................................23

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012)................................................................................6

*In re: Monitronics Int'l, Inc.*,
    MDL No. 1:13-MD-2493, 2016 WL 7413495 (N.D. W.Va. Dec. 22, 2016).........................22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)................................................................................30

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ..........................................................17, 18

*In re PaineWebber Ltd., P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................19, 20, 24

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................30

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) .................................................................19

*Roach v. T.L Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)....................................................................28

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).....................................................................27

*Steinfeld v. Discover Fin. Servs.*,
    No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ............................................25

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................23

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982)................................................................13, 14

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...............................21

*Thomas v. Taco Bell Corp.*,
    879 F. Supp. 2d 1079 (C.D. Cal. 2012) ..................................................22

*In re Traffic Executive Ass'n,*
    627 F.2d 631 (2d Cir.1980) ................................................................................ 18

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ......................................................... 13, 14, 15, 16

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ....................................................................................... 26

*Zyburo v. NCSPlus, Inc.,*
    44 F. Supp. 3d 500 (S.D.N.Y. 2014) ........................................................ 28, 29

**Statutes**

28 U.S.C. § 1711 ...................................................................................................... 15

28 U.S.C. § 1712 ...................................................................................................... 15

28 U.S.C. § 1713 ...................................................................................................... 15

28 U.S.C. § 1714 ...................................................................................................... 15

28 U.S.C. § 1715 ...................................................................................................... 15

47 U.S.C. § 227 ................................................................................................. *passim*

47 U.S.C. § 227(b)(1)(A)(iii) ..................................................................................... 6

47 U.S.C. § 227(b)(3) ........................................................................................... 6, 22

47 U.S.C. § 227(c) ...................................................................................................... 6

47 U.S.C. § 227(c)(5) ................................................................................................. 6

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 30, 31

Fed. R. Civ. P. 23(a) ............................................................................................... 26

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 26

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 27

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 27

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 28, 29

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 26

Fed. R. Civ. P. 23(e) .................................................................................................31

Fed. R. Civ. P. 23(e)(1) .............................................................................................30

**Other Authorities**

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2016 Supp.)........................16, 17, 19

# I.  INTRODUCTION

Plaintiff Abante Rooter and Plumbing, Inc. ("Abante" or "Plaintiff") has reached a settlement with New York Life Insurance Company ("New York Life") in this proposed class action lawsuit brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] The settlement requires New York Life to pay $3,350,000 to establish a non-reversionary settlement fund for the benefit of Plaintiff and the 25,830 proposed Settlement Class members. All Settlement Class members who submit a simple claim form will receive a cash payment. As discussed below, Plaintiff estimates that each claiming Settlement Class member would receive up to $815.00, assuming a 10% claims rate.

The common fund also will be used to pay (1) all costs associated with administration of the settlement, which are estimated by Plaintiff to be $80,000; (2) an incentive award to the Plaintiff in the amount of $10,000, subject to Court approval; (3) $1,116,666 in requested attorneys' fees, which, if approved by the Court, represent one-third of the common fund; and (4) approximately $34,500 in out-of-pocket expenses Plaintiff's counsel incurred to prosecute this case. If the Court approves these requests, approximately $2,108,834 will be used to pay Settlement Class members. Plaintiff's counsel estimate that each claimant could receive up to $815 depending upon the number of claims submitted.[2]

The proposed settlement is fair, reasonable, and adequate. Accordingly, Plaintiff respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel the law firms of Broderick & Paronich, P.C., Law Offices of Matthew P. McCue, and The Richman Law Group; (4) appoint Abante Rooter and Plumbing, Inc. as Class Representative; (5) approve the

---

[1] The Settlement Agreement is attached as Exhibit 1.
[2] The $815 per claimant estimate assumes a 10% claims rate.

proposed notice plan; (6) appoint Kurtzman Carson Consultants, LLC ("KCC") to serve as settlement administrator; and (7) schedule the final fairness hearing and related dates.

## II.  STATEMENT OF FACTS

### A.    Background and Procedural History

Seeking to protect consumers against a growing flood of invasive and unwanted telemarketing calls, Congress enacted the TCPA to "ban all computerized calls to the home"— including "all autodialed calls…[to] cellular phones"— "unless the called party consents to receiving them, or unless the calls are made for emergency purposes." S. Rep. No. 102-178, at 6 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 742 (2012) (the TCPA restricts "computerized calls to private homes" and other "abuses of telephone technology").

For wireless numbers, the TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice"—collectively referred to as automated calls—"to any telephone number assigned to a…cellular telephone service" or similar wireless service, other than calls made to collect a government debt or calls exempted by the Commission. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA also prohibits any party from making telephone calls to a residential number that has been listed on the National Do Not Call Registry for at least 30 days. *See* 47 U.S.C. § 227(c)(5). The TCPA provides a private cause of action to persons who receive calls in violation of these provisions. *See* 47 U.S.C. §§ 227(b)(3), (c).

New York Life Insurance Company is a mutual life-insurance company headquartered in New York City. Plaintiff filed this putative class action lawsuit alleging, among other things, that a New York Life agent made telemarketing calls to his cellular telephone numbers using pre-recorded messages in violation of the TCPA. New York Life denies all allegations and liability to plaintiff and the putative class.

New York Life has different levels of agents. A provisional or "PTAS" agent is the most junior of the New York Life agent employees. It is someone who is considering becoming a full time agent, and is only required to work part-time. *See* <u>Exhibit 2</u>, *Christopher Tebeau Deposition* at 28:16-20. Bardia Hariri began his time with New York Life PTAS agent. *See* <u>Exhibit 3</u>, *Bardia Hariri Deposition* at 13:20-25. One of the way PTAS agents try to solicit business is through the use of telemarketing. *Tebeau Deposition* at 35:12-15. In order to attempt to ensure that their agents comply with telemarketing restrictions, New York Life sends communications to agents to make them aware of telemarketing laws as well as the tools available to them to facilitate compliance. *Tebeau Deposition* at 21:18-24. Additionally, PTAS agents are required to attend classes that relate to restrictions on telemarketing and applicable laws. *Tebeau Deposition* at 33:22-24. However, shortly after beginning his employment with New York Life, and prior to his completion of these courses relating to telemarketing restrictions, Mr. Hariri unilaterally hired a third party company, LiveTransfers.com ("LiveTransfers"). *Hariri Deposition* at 17-18:25-2.

Mr. Hariri located LiveTransfers while doing an internet search that focused on generating new business prospects. *Hariri Deposition* at 28:16-19. Mr. Hariri hired LiveTransfers to make telemarketing calls with pre-recorded messages, with a script he provided, to find people who were potentially interested in New York Life's services. *Hariri Deposition* at 30:16-20. If an individual responded to the pre-recorded message, LiveTransfers would then automatically send the call to Mr. Hariri's phone using a dedicated telephone number so he would know the call was coming from a LiveTransfers prospect. *Hariri Deposition* at 27:17-21.

Abante is a small business that is owned by Fred Heidarpour who, like many consumers nationwide, has received automated and unwanted telemarketing calls despite the strict

prohibitions on such practices under the TCPA. In fact, in an extra effort to avoid such messages, Mr. Heidarpour placed his Abante cell phone number on the National Do Not Call Registry. However, despite Mr. Heidarpour's registration, and despite the fact that the number at issue was registered to a cellular telephone service, he received a pre-recorded call that was part of the arrangement between Mr. Hariri and Live Transfers. *See* Dkt. No. 1 at ¶ 16-28.

Through discovery, the Plaintiff obtained Defendants' telemarketing policies and practices, correspondence and contracts relating to the relationship between Mr. Hariri and LiveTransfers, as well as the calling records of all pre-recorded calls that LiveTransfers made for Mr. Hariri during their relationship. *See* Affidavit of Anthony Paronich at ¶ 7. Plaintiff then obtained an expert witness to evaluate the calling records to identify the scope of the putative class. Plaintiff's expert determined that 25,830 individuals received pre-recorded calls on their cellular telephones or received multiple calls to a residential number that was on the National Do-Not-Call Registry. *Id.* at ¶ 8.

By the time the parties commenced settlement negotiations, they fully understood the scope of the class, the strengths and weaknesses of their respective claims and defenses, and the extent of class wide damages. Paronich Decl. ¶ 9. The parties mediated with the Honorable Morton Denlow (Ret.) of JAMS in Chicago and that mediation resulted in the proposed settlement that is before this Court. *Id.* at ¶ 10.

**B.    The Settlement Terms**

The terms of the parties' proposed settlement are contained within the Settlement Agreement. *See* Ex. 1. For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms.

**1.    <u>The Settlement Class</u>**

The proposed "Settlement Class" is comprised of:

> All persons or entities within the United States in the Class List, to whom telemarketing calls promoting New York Life Insurance goods or services were made by or on behalf of New York Life Insurance using an automatic telephone dialing system since May 13, 2012 through the date of signature of the settlement agreement.

The "Class List" includes (1) cellular telephone numbers, or (2) residential numbers listed on the National Do Not Call List, each of which were contacted by Live Transfers from May 13, 2012 to the present.

### 2. **Monetary Relief**

The Settlement Agreement requires New York Life to pay $3,350,000 to the Settlement Class, inclusive of all fees and costs, including all costs of administration. Settlement Agreement § 2.1. KCC estimates administration costs to be $80,000. Paronich Decl. ¶ 11. The $3.350 million payment will create a "Settlement Fund" inclusive of all payments to Settlement Class members who timely and properly file claims; payments to Class Counsel in the requested amount of $1,116,666 in fees and approximately $34,500 in litigation costs; settlement administration costs as set forth above; and an incentive award to the Plaintiff of $10,000. If any amounts remain in the Settlement Fund as a result of uncashed checks, after two rounds of checks are sent to class members who filed claims, the parties will ask the Court to disburse those funds to a *cy pres* recipient recommended by the parties, subject to the Court's approval. *Id.* § 2.3(c).

### a. *Named Plaintiff's incentive award*

If approved by the Court, Plaintiff will receive a total incentive award of $10,000. Settlement Agreement §8.2. The Plaintiff assisted with the drafting of the Complaint, provided information regarding their interactions with Defendant, and was ready and willing to respond to discovery, sit for depositions, and testify at trial. Paronich Decl. ¶ 12. This award compensates

Plaintiff for its time and effort and for the risks it undertook in prosecuting the case, as well as attaching its name to this public litigation.

### b. *Attorneys' fees and litigation expenses*

The Settlement Agreement provides that Plaintiff's counsel may request an award of attorneys' fees and litigation expenses. Settlement Agreement § 8.1. Plaintiff's Counsel will file a fee petition with the Court requesting approval of an attorneys' fee award of 33.33% of the Settlement Fund ($1,116,666) to compensate them for the work already performed in the case and the risk they undertook taking this action on a contingent basis. *See* Paronich Decl. ¶ 13. The Settlement Agreement is not contingent on the amount of attorney's fees or costs awarded. Counsel will file the fee petition thirty (30) days before the deadline for Settlement Class members to object. *Id.*

Plaintiff's Counsel also seek reimbursement for approximately $34,500 in out-of-pocket costs they have incurred prosecuting this action. Paronich Decl. ¶ 14. This amount is comprised principally of the amount paid to its experts to analyze Defendant's data, identify class members, and determine the number of alleged TCPA violations. The remaining amount includes general litigation expenses including travel to depositions and hearings, transcript costs, and mediation expenses. *Id.*

### c. *Administration costs*

Plaintiff proposes to retain KCC to administer the settlement and process claims. KCC's duties will include preparing and mailing notice, fielding questions from Settlement Class members regarding the settlement, establishing and maintaining a settlement website, processing claims, and issuing checks to all members of the Settlement Class who file claims.

### d.   *Settlement Class payments*

After deduction for attorneys' fees, costs of administration and other costs, approximately $2,108,834 will remain in the Settlement Fund, which will be distributed proportionately to all Settlement Class members who submit a timely and proper claim form. Settlement Agreement § 2.3(a). Assuming the Court grants the requested attorneys' fees, litigation expenses, and notice and settlement administration fees, Plaintiff estimate that each claiming Settlement Class member could receive up to $815, assuming a 10% claims rate. Paronich Decl. ¶ 15.

To receive a cash payment, Settlement Class members must submit a claim form. Settlement Agreement § 2.3(a). The settlement administrator will mail Settlement Class members a claim form consisting of a tear-off postage-prepaid postcard that can simply be signed and returned. Settlement Class members also may submit claim forms electronically on the Settlement Website. Settlement Agreement § 1.27. Settlement Class members can also download a claim form on the Settlement Website. Regardless of the method by which they submit their claims, Settlement Class members only need to sign the claim form certifying that the information provided to them in the notice as to their telephone number, name and address is correct; no documentation or further proof is required.

Once all the claims have been received, the settlement administrator will calculate the amount of an individual Settlement Class member's award on a *pro rata* basis after deducting any court-awarded attorneys' fees, litigation costs, notice and claims administration expenses, and any court-awarded service awards for the named Plaintiff. Settlement Agreement § 2.3. As indicated above, assuming a 10% claims rate, each claimant could receive up to $815.

### 3.   <u>Non-monetary Relief</u>

The settlement also provides for non-monetary relief designed to protect Settlement Class members (and all other individuals nationwide) from receiving future telemarketing calls from

Defendant. Settlement Agreement § 2.2. New York Life has implemented a series of enhanced

compliance measures. First, in response to the possibility of another scenario occurring as

alleged in the lawsuit, where a New York Life PTAS agent engages a third party vendor to make

telemarketing calls prior to their completion of the programs and training, New York Life has

developed a telemarketing specific compliance document that all employees are required to

acknowledge and follow as a condition of their employment. *Tebeau Deposition* at 61:7-25,

69:10-18. Employees who fail to execute and return the document have had their access to New

York Life's system suspended. *Id.* at 70:6-14.

Second, New York Life sends all of its field agents quarterly compliance

communications that remind them of their obligations under the terms of their contract with New

York Life to comply with telemarketing regulations. *Tebeau Deposition* at 67:2-10. Finally, New

York Life's agent handbook, which is required to be reviewed and signed before any access is

given to the New York Life system, has been enhanced to further address the specifics of

telemarketing law restrictions. *Tebeau Deposition* at 71:20-25.

### 4.    Scope of the Release

In consideration for the monetary and non-monetary relief, Settlement Class members

agree to release New York Life from claims arising from the telemarketing conduct during the

proposed class period. The Settlement Agreement contains the following release:

> The Releasing Parties, as herein defined, do hereby release and forever discharge
> the Released Parties, as herein defined, of and from all claims, demands, causes of
> actions, suits, damages, fees (including attorney's fees), and expenses arising out
> of the sending of telemarketing calls promoting New York Life goods or services
> arising under the TCPA or similar state laws governing such matters between May
> 13, 2012 through the date of signature of the settlement agreement in affiliation with
> LiveTransfers.com.

*See* Settlement Agreement § 1.16. The release is properly tailored to the nature of the claims asserted in the lawsuit, and the release is explicitly limited to the individuals on the Class List, who are the released parties.

In a prior hearing, the Court raised a question as to the scope of the release with respect to claims that the Plaintiff did not explicitly assert, namely the release of "similar state laws governing such matters". Here, the release is appropriate because the released claims all arise out of the same factual predicate. *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 107 (2d Cir. 2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."); *TBK Partners, Ltd. v. W. Union Corp.,* 675 F.2d 456, 460 (2d Cir. 1982) (concluding "that in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action").

As long as the released claims share the same integral facts, even if the claims go beyond the complaint, the class settlement should be approved provided that the claims are adequately represented prior to settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106-8 (2d Cir. 2005). Here, the alleged telemarketing violations are based on the same factual predicate regardless of whether the violation was a state law or the federal TCPA the same facts support (or limit) Defendant's liability. Furthermore, the Class List, produced to Plaintiff and his expert, contains all call records at issue. Because all of the released claims stem from Defendant's same conduct, i.e. Defendant's telemarketing campaign through a third party using an automatic

dialing system to call individuals on the Class List, all of the released claims stem from the same factual predicate as the allegations in the Complaint.

The Second Circuit has recognized the importance of comprehensive settlements that prevent re-litigation of settled questions at the core of a class action and end defendants' exposure to class claims. *TBK Partners,* 675 F.2d at 460; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("Practically speaking, '[c]lass action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability.'") (citation omitted). Here, if the Release did not include all calls arising from the telemarketing campaign at issue, Defendant could not have confidence that the Settlement will end its exposure to class claims arising from the same facts. For example, if the release was limited to only TCPA violations for calls made to cell phones, Defendant could be subject to potential lawsuits of individuals on the Do Not Call list with claims that arise from the same factual predicate underlying the current suit forcing Defendant to re-litigate the same factual issues presented in this case. The Release is therefore appropriately tailored to claims arising from the same facts, but also broad enough to prevent re-litigation of the same facts in the future. The Release of all claims relating to Defendant's automated telephone dialing campaign is an essential element of the settlement. It is not an extra benefit that was improperly added, but goes to the heart of the parties' dispute. Without a release of all claims arising from Defendant's same telemarketing business practice, Defendant does not limit its exposure to additional claims stemming from this same practice. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 106 (2d Cir. 2005) ("Practically speaking, 'class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability.'").

**5.     Notice to Appropriate Federal and State Officials**

In 2005, Congress passed the Class Action Fairness Act, 28 U.S.C. §§ 1711 through 1715 ("CAFA"). 28 U.S. Code § 1715 requires that, "Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official." Consistent with these requirements, a CAFA Notice will be sent to the Attorney General in all 50 states. Paronich Decl. ¶ 16.

**6.     Settlement Notice to Class Members**

In conjunction with preliminary approval, Plaintiff respectfully ask the Court to approve a notice program, which KCC will administer by (1) locating Settlement Class address information using a reverse lookup approach from the call recipient's telephone numbers; (2) mailing a postcard with attached postage pre-paid claim form to Settlement Class members; (3) setting up and maintaining the settlement website; (4) tracking and processing all claims and any persons who request to opt out from the Settlement Class; and (5) calculating and issuing Settlement Awards. Settlement Agreement § 4-5.

Notice to the Settlement Class will be made twenty-one (21) days following the Court's order preliminarily approving the proposed settlement. Settlement Class members will have sixty (60) days from the date the postcard and claim form are mailed to submit a written request to be excluded from the Settlement Class or to file a claim. Settlement Agreement §§ 1.17, 4.4. Settlement Class members also will have sixty (60) days following the initial mailing to object to the settlement. Settlement Agreement §§ 1.17, 4.3. Class Counsel will post their fee petition on the Settlement Website at least thirty (30) days before the deadline to file objections.

The postcard that KCC will mail to Settlement Class members, which is written in plain English, summarizes the settlement and clearly sets forth the deadline to submit a claim, request

exclusion, or object to the settlement. Settlement Agreement, Ex. 2. The postcard includes the amount of Class Counsel's requested fee and provides Settlement Class members with an estimate of their cash award if they file a claim. *Id.* The postcard directs the Settlement Class members to a settlement website for further information. At the settlement website, copies of the Settlement Agreement, settlement notice, claim form, preliminary approval order, and operative complaint will be available for viewing and downloading. Paronich Decl. ¶ 17. The settlement website also contained detailed information about the settlement, which Settlement Class members can either download or read online.

### III.  AUTHORITY AND ARGUMENT

### A.    The Settlement Approval Process

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (observing there is a "strong judicial policy in favor of settlements, particularly in the class action context") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. 2016 Supp.) (citing cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the small value of the claims of the individual class members, would be wholly impracticable. The proposed settlement is the best vehicle for Settlement Class members to receive relief in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of

notice of the settlement to all affected class members; and (3) a "fairness hearing" or "final approval hearing," at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 433-34 (2016). This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* Newberg § 13.1.

Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and, in some cases, an informal presentation by the settling parties. *Clark v. Ecolab, Inc.*, 04 Civ. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citation omitted). The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement "is within the range of possible approval" and thus whether notice to the class is worthwhile. Newberg § 13.13; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled."). This Court has broad discretion to approve or reject a proposed settlement. *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("This Court will disturb a judicially-approved class action settlement only when there is a clear showing that the District Court abused its discretion.").

The Court's grant of preliminary approval will allow the Settlement Class to receive direct notice of the proposed Settlement Agreement's terms and the date and time of the final approval hearing, at which Settlement Class members may be heard regarding the Settlement

Agreement, and at which time further evidence and argument concerning the settlement's

fairness, adequacy, and reasonableness may be presented. *See* MCL 4th § 21.634. *see also In re*

*Baldwin-United Corp.*, 105 F.R.D. 475, 485 (S.D.N.Y. 1984) (authorizing provisional class

certification and notice "without prejudice to the findings the Court will make after conducting

the fairness hearing, at which time all objections or arguments in opposition to the proposed

settlements will be heard and considered and proponents must discharge their burden to prove

that the proposed settlement agreements are fair and reasonable"); *In re Traffic Executive Ass'n*,

627 F.2d 631, 634 (2d Cir.1980) (to grant preliminary approval, the court need only find that

there is "'probable cause' to submit the [settlement] to class members and hold a full-scale

hearing as to its fairness).

**B.      Criteria for Settlement Approval**

Preliminary approval of a proposed settlement is warranted "[w]here the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations, has no

obvious deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class and falls within the reasonable range of possible approval." *See NASDAQ*,

176 F.R.D. at 102 (citing MCL (Third), at § 30.41 (1995)); *see also In re Gilat Satellite*

*Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007). These

criteria are satisfied here.

**1.      <u>The settlement is the product of informed, non-collusive negotiations</u>**

Where a settlement is reached only after extensive arm's-length negotiations by

competent counsel who had more than adequate information regarding the circumstances of the

Action and the strengths and weaknesses of their respective positions, it is entitled to a "strong

initial presumption of fairness." *In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. 104, 125

(S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997). The opinion of experienced counsel

supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement. *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see also Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, absent evidence to the contrary. Newberg § 11.28, at 11-59 (3d ed. 1992) (counsel are "not expected to prove the negative proposition of a noncollusive agreement").

Through JAMS, a nationally recognized provider of mediation services, the parties engaged the services of a retired federal magistrate judge, the Honorable Morton Denlow (Ret.), to assist them with their settlement discussions. Paronich Decl. ¶ 18. At all times the settlement discussions were arms-length and adversarial in nature. *Id.* The mediation only occurred after Plaintiff's counsel were made aware of the scope and size of the telemarketing at issue as well as facts regarding New York Life's potential vicarious liability for the telemarketing conduct of Livetransfers.com. Plaintiff's counsel thoroughly reviewed this information until they were satisfied that they had obtained the best deal possible for the class. *Id.* Plaintiff's counsel are experienced class action litigators and have litigated and settled dozens of cases, including TCPA cases. *Id.* ¶ 19. Accordingly, the proposed settlement is entitled to a "strong initial presumption of fairness." *PaineWebber*, 171 F.R.D. at 125.

### 2.    <u>The settlement treats all class members fairly and raises no red flags</u>

Because preliminary approval is simply the first step in the process of approving a settlement, courts have typically screened proposed settlements to determine if they have "obvious deficiencies, such as unduly preferential treatment of class representatives ... or

excessive compensation for attorneys." *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010) (quoting MCL § 30.41 (3d ed.) (1995).

This settlement raises no such red flags. The settlement is not contingent upon approval of attorneys' fees or any incentive awards to the named Plaintiff. The Court will separately and independently determine the appropriate amount of fees, costs, and expenses to award to Plaintiff's counsel and the appropriate amount of any award to the named Plaintiff. Plaintiff's counsel will file a fee petition seeking 33% of the Settlement Fund in attorneys' fees plus out-of-pocket litigation costs amounting to approximately $34,500. The settlement notice will disclose Plaintiff's counsel's fee and cost request to Settlement Class members and Plaintiff's counsel will post their fee request on the settlement website thirty (30) days before the objection deadline so that Settlement Class members will have sufficient time to evaluate the request and object if they desire.

The settlement treats all class members fairly. All class members who submit a claim will receive an equal, pro rata share of the Settlement Fund. The named Plaintiff will request an incentive award in the amount of $10,000. Like Plaintiff's counsel's fee request, the Court will independently evaluate the incentive award request and the request will be posted on the settlement website so that Settlement Class members will have an opportunity to object. For all these reasons, the proposed settlement treats all proposed Settlement Class members equally and fairly, and there are no "obvious deficiencies" which would prevent preliminary approval.

3.      **The settlement falls within the range of possible approval**

To assess a settlement proposal, courts must balance the strength of the Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the reaction of the class to the settlement; the stage of proceedings and the amount of discovery completed; the risks of establishing liability and damages; the risks of maintaining the class action through trial; the

ability of the defendant to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Even at this preliminary stage all of these factors favor settlement approval.

### a.   *The stage of the proceedings and the amount of discovery completed*

In evaluating the reasonableness of a settlement, courts consider whether the litigation has advanced to a stage where the parties "have a clear view of the strengths and weaknesses of their cases." *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (citation and internal marks omitted). Moreover, "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Constr. Inc. v. Maynard*, 758 F.2d 97, 101–2 (3d Cir. 1985). In the class action context, early settlement has far reaching benefits in the judicial system. *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

The parties resolved this case by litigating quickly, thoroughly, and effectively. Plaintiff's counsel thoroughly analyzed the factual and legal issues involved in this case. Paronich Decl. ¶ 20. Plaintiff's counsel received documents that identified the scope of the putative class, took depositions and reviewed all of the documents related to the telemarketing of New York Life with Livetransfers.com, as well as New York Life's telemarketing procedures and policies, which they alleged the LiveTransfers.com campaign was in contravention of. *Id.* This factor favors settlement approval.

### b.   *The risks of establishing liability and damages*

In assessing a proposed settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. See *Grinnell*, 495 F.2d at 463. Plaintiff and its counsel are confident in the strength of their case and their ability to prevail both at class certification and on the merits. However, New York Life insists that it cannot be held vicariously liable for calls it did not place. Plaintiff was at risk of losing this issue on summary judgment. *See e.g. In re: Monitronics Int'l, Inc.,* MDL No. 1:13-MD-2493, 2016 WL 7413495 (N.D. W.Va. Dec. 22, 2016) (granting motion for summary judgment on vicarious liability theory); *Thomas v. Taco Bell Corp.,* 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd, 582 F. App'x 678 (9th Cir. 2014) (same)*; see also Mey v. Pinnacle Sec., LLC,* No. 5:11CV47, 2012 WL 4009718, at *5 (N.D. W.Va. Sept. 12, 2012) (granting summary judgment on TCPA claim because plaintiff failed to show defendant had "ability to control the manner and means of the calls made on its behalf").

By contrast, the proposed settlement provides Settlement Class members immediate and certain payment. Each Settlement Class member who submits a claim will receive a cash payment of up to $815 (assuming a 10% claims rate), which *exceeds* the TCPA's damages provision of $500 per call. *See* 47 U.S.C. § 227(b)(3). The TCPA allows for a discretionary increase of the $500 for up to $1,500 per call if the illegal telemarketing conduct is done "knowing" or "willfully". The settlement also provides real non-monetary relief that New York Life has already implemented to ensure that its calling complies with the TCPA.

### c.   *The length and expense of continued litigation*

"The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Substantial work remained to prepare this case for trial. Although Plaintiff has

obtained calling data and performed expert work, their experts had not been deposed. Plaintiff also would have needed to take depositions of other New York Life witnesses and New York Life almost certainly would have deposed the named Plaintiff and served discovery requests on it. Substantial briefing, including motions for class certification, summary judgment, and possibly a decertification motion also remained. Further, even in the event that the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). In fact, as outlined above, the settlement amount that claimants will receive is expected to be *$315 more* than a potential trial verdict in the Plaintiff's favor, if the amount of that trial verdict was not trebled, which is a question reserved for the Court.

Because this litigation would have placed significant burdens on both parties and the Court, this factor favors settlement approval.

### d. *The range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation*

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of Plaintiff's case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740,

762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. Apr. 1987). Moreover, the Court need only determine whether the settlement falls within a "range of reasonableness." *In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. at 125 (quotation and internal marks omitted).

The Settlement Agreement provides excellent relief for the proposed class. New York Life has agreed to pay $3,350,000 into a Settlement Fund. The Settlement Fund is non-reversionary—all funds will be disbursed following final approval. No funds will revert to New York Life. Each Settlement Class member who submits a simple claim form will receive a pro rata share of the Settlement Fund after settlement expenses are deducted. Although the precise amount of each claimant's award cannot be determined until all claims have been submitted, Plaintiff estimate that each claimant may receive as much as $815, based on a conservatively estimated claims rate range of 10%, which is slightly higher than claims rates in recent TCPA actions across the country. Paronich Decl. ¶ 21.

The estimated awards are in line with — and indeed exceed — awards approved in other TCPA settlements. *See Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement class members received approximately $71.16); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (granting final approval of TCPA settlement where class members would receive $40 cash or $80 merchandise certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar.

10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

The settlement also calls for significant prospective non-monetary relief. New York Life has agreed already implemented changes to its policies and procedures that ensure that its agents will not hire third party vendors that engage in illegal pre-recorded telemarketing. The company also sends its agents quarterly reminders about their contractual obligation to comply with telemarketing laws. Paronich Decl. ¶ 22.

The proposed settlement is an excellent outcome for the class, especially in light of New York Life's uncertain liability for the calling activities of a third party. Even at this preliminary juncture, all factors favor settlement approval. Because the proposed settlement is "within the range" of possible approval, the class should be notified and given the opportunity to evaluate the proposed settlement's terms.

## IV.  THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

Plaintiff respectfully request that this Court provisionally certify the proposed Settlement Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3). Such certification will allow the Settlement Class to receive notice of the settlement and its terms, including the right to submit a claim and recover money if the settlement is approved, the right to be heard on the settlement's fairness, the right to opt out of the settlement, and the date, time and place of the formal settlement hearing. For the following reasons, certification of the Class for settlement purposes is appropriate under Rule 23(a) and (b)(3).

A.      **Rule 23(a) Requirements**

1.      **Numerosity is satisfied**

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (finding numerosity requirement met if a class consists of at least 40 members). The proposed Settlement Class consists of 25,830 persons spread throughout the country. Numerosity is satisfied.

2.      **Commonality is satisfied**

Rule 23(a)(2)'s commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Even a single common question will do. *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 20 (E.D.N.Y. Jan. 5, 2015) (commonality satisfied despite existence of individualized issues where injuries resulted from a unitary course of conduct).

This case raises numerous common issues, including whether New York Life is vicariously liable for calls placed on its behalf, whether class members consented to receive those calls, and whether the class is entitled to damages of $500 or the discretionary award of any amount above that up to $1,500. Thus, commonality is satisfied. *See* Fed. R. Civ. P. 23(a)(2); *see also Kristensen v. Credit Payment Serv.,* 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (holding vicarious liability a common issue in TCPA action); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 398 (M.D.N.C. 2015) (existence of an agency relationship could be resolved on a class-wide basis); *Ikuseghan v. MultiCare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818,

at *6 (W.D. Wash. July 29, 2015) (commonality satisfied where issue was whether standardized evidence showed prior express consent).

### 3.   Plaintiff's claims are typical of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (reversing denial of class certification). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936–37;

Here, Plaintiff's and Settlement Class members' claims arise from the same course of events: Telemarketing calls placed on New York Life's behalf to potential customers. Plaintiff and proposed Settlement Class members all seek statutory damages for these calls. Typicality is satisfied.

### 4.   Plaintiff and their counsel will adequately represent the Settlement Class

"The Second Circuit has held that the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless 'plaintiff's interests are antagonistic to the interest of other members of the class.'" *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). Here, Plaintiff's interests in this litigation are aligned with those of the class. All seek recovery for unlawful telemarketing calls. Plaintiff hired lawyers that are experienced in class actions generally and TCPA litigation in particular. *See* Paronich Decl. ¶ 6; Declaration of

Matthew McCue, at ¶ 11; Declaration of Kim Richman at ¶ 9; Declaration of Edward Broderick at ¶ 9. All counsel support the settlement, and adequacy is satisfied.

**B.**     **Rule 23(b)(3)**

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011).

**1.**     **Common issues predominate**

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quotation omitted). Common questions predominate if class wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987).

This case is particularly well-suited for class treatment because the focus of the case is on New York Life's conduct. The central issue — whether New York Life is liable for calls placed to potential customers— could be proved through New York Life's calling records, policies, procedures, and communications with telemarketing vendors. Unlike many TCPA actions, individualized issues of consent do not predominate. The burden is on the defendant to plead and produce evidence of that consent. *Johansen v. GVN Michigan, Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding

defendant failed to make a sufficient showing that individualized issues of consent would predominate where defendant failed to keep records of consent). No evidence of consent exists in this case. Thus, any individualized issues of consent do not predominate.

### 2.      A class action is superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding. *Kaye v. Amicus Mediation & Arbitration*, 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is a superior method for the fair and efficient adjudication of this case. Plaintiff's claims are shared by hundreds, if not thousands, of consumers. The resolution of all claims held by members of the Classes in a single proceeding would promote judicial efficiency and avoid inconsistent opinions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, the statutory damages available under the TCPA ($500 per violation, or $1,500 if the violation is willful) are small in comparison to the costs of litigation. As a result, class members are unlikely to be willing or able to pursue relief on an individual basis, making the class action the superior method of adjudicating these claims.

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only

certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). For these reasons, provisional certification of the Settlement Class is appropriate.

## V.  THE PROPOSED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND

The Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed forms of notice, attached a to the Settlement Agreement do just that. The notices are clear, straightforward, and provide persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Thus, the notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Settlement Agreement provides for direct notice via U.S. Mail to members of the Settlement Class. This notice program satisfies due process because it is designed so that all class members will receive direct notice. All in all, the notice program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

## VI.  SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval. The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).

Plaintiff request that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 100 days after entry of an order preliminarily approving the settlement and 19 days after the objection/exclusion deadline, and schedule further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 21 days following entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | Within 50 days following entry of Preliminary Approval Order |
| Exclusion/Objection Deadline | 81 days after entry of Preliminary Approval Order |
| Deadline to Submit Claims | 81 days after entry of Preliminary Approval Order |
| Final Approval Brief and Response to Objections Due | 14 days after Exclusion/Objection/Claim Deadline |
| Final Approval Hearing/Noting Date | No earlier than 100 days after the Preliminary Approval Order is Entered |
| Final Approval Order Entered | At the Court's Discretion |

## VII.  CONCLUSION

For all of the above reasons, the proposed settlement presented to this Court by all parties is well within "the range of possible approval" and should be preliminarily approved in all respects. A proposed Preliminary Approval Order is attached as <u>Exhibit 8</u>.

Dated: March 16, 2017.                        Respectfully submitted,


/s/ *Anthony I. Paronich*
Edward A. Broderick
Email: ted@broderick-law.com
Anthony Paronich
Email: anthony@broderick-law.com
BRODERICK & PARONICH, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (508) 221-1510

Kim E. Richman
Email: krichman@richmanlawgroup.com
THE RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

Matthew P. McCue
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE


I, hereby certify that on March 16, 2017, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

counsel of record.

/s/ *Anthony I. Paronich*
Anthony Paronich
BRODERICK & PARONICH, P.C.