USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5|18|17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABANTE ROOTER AND PLUMBING, INC., *and all others similarly situated,*

    Plaintiffs,

-against-

NEW YORK LIFE INSURANCE COMPANY,

    Defendant.

16-CV-03588 (BCM)

**ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, APPOINTING CLASS COUNSEL**

**BARBARA MOSES, United States Magistrate Judge.**

  Plaintiff Abante Rooter and Plumbing, Inc. (Abante) brought this action against defendant New York Life Insurance Company (New York Life), on behalf of itself and all others similarly situated, alleging that New York Life violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), when one of its provisional employees hired a third-party company to make computerized telemarketing calls to prospective customers using pre-recorded messages. Calling records produced by New York Life and evaluated by an expert witness retained by plaintiff show that 25,830 individuals received such calls on a cellular telephone number, or received multiple calls on a residential telephone number on the National Do Not Call Registry. *See* Decl. of Anthony I. Paronich, filed Mar. 16, 2017 (Dkt. No. 27), ¶ 8.

  Following a mediation session with the Honorable Morton Denlow (Ret.) of JAMS, the parties reached a settlement. Paronich Decl. ¶ 10. Plaintiff now seeks: (1) preliminary approval of the parties' Class Action Settlement Agreement (the Agreement); (2) conditional certification of a proposed settlement class (Settlement Class); (3) approval of the proposed notice of settlement; (4) appointment of Abante's lawyers as class counsel; and (5) entry of a scheduling order setting, among other things, a date for a final approval hearing. *See* Pl. Unopposed Mot. for

Prelim. Approval of Class, filed Mar. 16, 2017 (Dkt. No. 26), at 1-2. For the reasons that follow the motion will be GRANTED IN PART. The Court cannot approve the proposed notice provisions on the present record, because plaintiff has not established that the written notice attached to the Agreement will be mailed to all or substantially all members of the Settlement Class. Further, the Court cannot enter a scheduling order until this issue is resolved.

## THE PROPOSED SETTLEMENT

Under the Agreement, New York Life would pay a total of $3,350,000 to establish a non-reversionary fund for the benefit of the 25,830 members of the Settlement Class. *See* Ag. (Dkt. No. 26-1), ¶¶ 2.1-2.3. After attorneys' fees of up to one-third of the common fund, approximately $34,500 in out-of-pocket expenses, estimated administrative costs of $80,000, and a $10,000 incentive award for Abante, *see* Pl. Mot. at 1, some $2.1 million would be distributed to class members who file what plaintiff describes as a "simple claim form." *Id.* Assuming a 10% claims rate, each claimant would receive approximately $815. *Id.* The Agreement would also require New York Life to implement various enhanced compliance measures designed to prevent future violations of the TCPA. Ag. ¶ 2.2. The settlement would bind all members of the Settlement Class who do not affirmatively opt out, regardless of whether they make a claim against the common fund. *Id.* ¶ 4.4.

## DISCUSSION

Preliminary approval of a proposed class action settlement "is the first in a two-step process" required by Fed. R. Civ. P. 23(e) before a class action may be settled. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). At this step, "prior to notice to the class, a court makes a preliminary evaluation of fairness." *Id.*

2

"Preliminary approval is typically granted 'where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Escort v. Princeton Info. Ltd.*, 2017 WL 1194684, at *2 (S.D.N.Y. Mar. 30, 2017) (quoting *Silver v. Great Jones Rest.*, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013)).

If preliminary approval is granted, "notice of a hearing is given to the class members, where class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2. "Because of the two-step process, a grant of preliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Id.* (quoting *In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980)).

Having reviewed the Agreement and plaintiff's motion papers, including the Paronich Declaration and the deposition transcripts of Christopher Tebeau (testifying on behalf of New York Life pursuant to Fed. R. Civ. P. 30(b)(6)) and Bardia Hariri (Dkt. Nos. 26-2 and 26-3), the Court concludes that the Agreement appears to be the product of adequate investigational efforts and arms'-length negotiations, has no obvious deficiencies, does not grant unduly preferential treatment to the proposed class representative, and provides relief on terms that are within the range of possible approval. Preliminary approval is therefore appropriate, except with respect to the Notice Plan set forth therein (Ag. ¶ 4.2), which is discussed in more detail below.

### A. CONDITIONAL CERTIFICATION OF THE PROPOSED CLASS

Pursuant to Fed. R. Civ. P. 23(b)(3), the Court conditionally certifies, for purposes of the proposed settlement only, the following Settlement Class:

> [A]ll persons or entities within the United States [o]n the Class List, to whom telemarketing calls promoting New York Life Insurance goods or services were made by or on behalf of New York Life Insurance using an automatic telephone dialing system since May 13, 2012 through the date of signature of the settlement agreement.

*See* Ag. ¶ 1.23. The Class List "means and includes each and every individual and entity whose phone number(s) are listed in the calling records produced by New York Life on or about January 4, 2017." *See* Ag. ¶ 1.22.

To be certified, a putative class must satisfy the four requirements set forth in Fed. R. Civ. P. 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, the class must satisfy at least one of the requirements set forth in Fed. R. Civ. P. 23(b). Here, the numerosity requirement is satisfied because the Settlement Class consists of 25,830 persons located throughout the United States. Pl. Mot. at 22; Paronich Decl. ¶ 8. *See Escort*, 2017 WL 1194684, at *2 (provisionally certifying a settlement class with 45 members as sufficiently numerous). The commonality requirement is satisfied because there appear to be questions of law or fact common to the Settlement Class, such as "whether New York Life is vicariously liable for calls placed on its behalf, whether class members consented to receive those calls, and whether the class is entitled to damages of $500 [under the TPCA] or the discretionary award of any amount above that up to $1,500." Pl. Mot. at 22. The typicality requirement is also satisfied, because plaintiff's claims for statutory damages for the telemarketing phone calls placed by LiveTransfers appear to be typical of the class claims being resolved through the Agreement. *Id.* at 23. Finally, plaintiff Abante and its lawyers appear to be capable of fairly and adequately protecting the interests of the Settlement Class. *Id.* at 23.[1]

---

[1] Abante is a small business owned by Fred Heidarpour. Pl. Mot. at 3. Heidarpour reportedly received a pre-recorded call from Live Transfers on his Abante cell phone, despite placing the phone number on the National Do Not Call Registry. *Id.* at 4.

4

In addition, the requirements of Fed. R. Civ. P. 23(b)(3) appear to be satisfied, namely, that questions of law or fact common to the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Pl. Mot. at 24-25. Plaintiff represents, among other things, that individualized issues of consent, which can present Rule 23(b)(3) problems in TPCA cases, would not predominate in this action because New York Life, which has the burden of pleading and providing evidence of consent, has no such evidence. *Id.*

### B.   APPOINTMENT OF CLASS COUNSEL, CLASS REPRESENTATIVES, AND SETTLEMENT ADMINISTRATOR

Pursuant to Fed. R. Civ. P. 23(g), the Court appoints Edward Broderick and Anthony Paronich, of Broderick & Paronich, P.C.; Matthew P. McCue, of the Law Office of Matthew P. McCue; and Kim E. Richman, of the Richman Law Group, as class counsel. Rule 23(g)(1)(A) requires the Court to consider the following factors when making such an appointment: "(i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The declarations submitted by each of the above-named lawyers (Dkt. Nos. 27-30) adequately demonstrate that they satisfy these requirements. The Court also appoints Abante to act as the representative of the Settlement Class (Class Representative), and appoints Kurtzman Carson Consultants LLC (KCC) as the Settlement Administrator.

### C.   CLASS NOTICE

Fed. R. Civ. P. 23(c)(2)(B) requires, for any class certified under Rule 23(b)(3), that the court direct to class members "the best notice that is practicable under the circumstances." *See*

*also* Fed. R. Civ. P. 23(e)(1) (before approving a class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound" thereby). Here, the Agreement contains a Notice Plan, which provides for: (a) "direct notice to the names and addresses associated with the cellular telephone numbers in the Settlement Class," using a form provided as Exhibit 3 to the Agreement; and (b) the creation of a website (the Settlement Website), which will include substantially the same form of notice as well as the ability to file an online claim. Ag. ¶ 4.2.[2] In order to determine what names and addresses are "associated with" the cellular telephone numbers in the Settlement Class, the Claims Administrator will use "a reverse lookup approach from the call recipient's telephone numbers." Pl. Mot. at 11. There is no provision for publication notice, email notice, or a link to the Settlement Website from any other website maintained by New York Life.

As noted above, the Settlement Class includes "[a]ll persons or entities within the United States on the Class List" to whom pre-recorded telemarking calls were made during a specified period of time. The Class List, in turn, includes "every individual and entity whose phone number(s) are listed in the calling records produced by New York Life" in discovery. Ag. ¶¶ 1.22-1.23. Plaintiff's motion papers make it clear that the Class List – and hence the Settlement Class – includes individuals and entities associated with residential as well as cellular telephone numbers. *See, e.g.*, Pl. Mot. at 4 ("25,830 individuals received pre-recorded calls on their cellular telephones or received multiple calls to a residential number that was on the National Do-Not-Call Registry"); *id.* at 5 ("The 'Class List' includes: (1) cellular telephone numbers, or (2) residential numbers listed on the National Do Not Call List"); Paronich Decl. ¶ 8

---

[2] Exhibit 2 to the Agreement, which appears to be a summary form of the proposed direct notice, is not referenced in either subsection of paragraph 4.2. If and to the extent the parties intend to utilize Exhibit 2 as part of their Notice Plan, they should clarify this point in the supplemental materials or modified Agreement discussed below.

("Plaintiff's expert determined that 25,830 individuals received pre-recorded calls on their cellular telephones or received multiple calls to a residential number that was on the National Do-Not-Call Registry"). Indeed, the form of notice that plaintiffs propose to mail states, in bold type: "If calls from New York Life were directed to your cellular telephone OR you received any calls to a telephone number registered on the National Do-Not-Call Registry, you could get a payment from a class action settlement." Ag. Ex. 3, at 1.

The Notice Plan, however, proposes that a direct notice will be sent, through the U.S. Mail, only to the names and addresses associated with "the *cellular* telephone numbers in the Settlement Class." Ag. ¶ 4.2(a) (emphasis added). There is no explanation for this limitation; no discussion of the proportion of residential to cellular telephone numbers within the Settlement Class; and no suggestion that it would be impossible, impractical, or unreasonable to provide direct notice by mail to the persons or entities associated with both types of numbers. Absent this information, the Court cannot conclude that a mailing directed at cellular subscribers only is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court will also require information concerning the success rate of the reverse lookup approach, so as to determine what proportion of the Settlement Class is likely to be reached by the mailing. *See, e.g.*, *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 92 (E.D.N.Y. 2007) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974)) ("Rule 23(b)(3) does not permit anything less than individual notice to each prospective Class Member, and the law is quite clear that concerns about the financial burdens of such notice cannot excuse noncompliance with that requirement.").

7

To the extent the parties do *not* intend to provide direct notice to persons associated with residential telephone numbers, they may file supplemental material in support of their preliminary approval motion, addressing the issues summarized above, on or before **June 1, 2017**. To the extent the parties *do* intend to provide direct notice to all members of the Settlement Class – that is, to the extent paragraph 4.2(a) inaccurately sets forth their agreement with respect to notice – they should also file a modified Agreement which at a minimum makes it clear that all members of the Settlement Class will be treated equally with respect to direct notice.[3]

The Court will reserve judgment regarding the proposed notice plan, as well as the requested scheduling order, until the supplemental material and/or revised Agreement has been filed.

## CONCLUSION

For the foregoing reasons plaintiff's preliminary approval motion is GRANTED IN PART AND DENIED IN PART without prejudice to renewal on or before June 1, 2017, as detailed above. The Clerk is respectfully directed to close Dkt. No. 26.

Dated: New York, New York
      May __, 2017

SO ORDERED.

_____
BARBARA MOSES

---

[3] In his brief, plaintiff represents that the notice program "is designed so that all class members will receive direct notice." Pl. Mot. at 26. If so, there appears to have been a miscommunication between the designers of the settlement and the drafters of paragraph 4.2(a).

8