**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated, | No. 1:16-cv-03588 |
| Plaintiff, | |
| v. | |
| NEW YORK LIFE INSURANCE COMPANY | |
| Defendant. | |

**PLAINTIFF'S MOTION IN SUPPORT OF**
**SERVICE AWARD, ATTORNEYS' FEES, AND COSTS**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

    A.   The Settlement Represents an Outstanding Result for the Class ............................ 2

    B.   The Action Involved Considerable Risk and a Complex Defense ......................... 4

    C.   Class Counsel Thoroughly and Efficiently Investigated the Class Claims............. 7

    D.   The Requested Service Award To The Named Plaintiff Should Be
         Approved............................................................................................................... 9

    E.   Class Counsel's Attorneys' Fees And Costs Should Be Approved ...................... 10

         1.   The Percentage of the Fund Method Should Be Applied Here ............... 10

         2.   The *Goldberger* Factors Support An Award Of One-Third Of The
             Common Fund .................................................................................... 13

         3.   Class Counsel's Time And Labor ........................................................... 14

         4.   The Litigation's Magnitude And Complexity........................................... 14

         5.   The Risks Of Litigation ......................................................................... 15

         6.   Quality Of The Representation ............................................................... 16

         7.   The Fee Is Reasonable In Relation To The Settlement............................ 17

         8.   Public Policy Considerations ................................................................. 18

    F.   Class Counsel Is Entitled To Reimbursement Of Its Litigation Expenses ........... 19

III.  CONCLUSION....................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACA Int'l v. FCC*,
   No. 15-1211 (D.C. Cir. Sept. 21, 2015) ...............................................................5

*Accounting Outsourcing, LLC. v. Verizon Wireless*,
   No. 03-CV-161, 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) ...........................13

*Adams v. Rose*,
   No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ...................................12

*Agne v. Papa John's Int'l., Inc.*,
   286 F.R.D. 559 (W.D. Wash. 2012) .......................................................................7

*Allen v. JPMorgan Chase Bank, N.A.*,
   13-cv-8285 (N.D. Ill. Nov. 3, 2015) .....................................................................12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   No. 04 CIV. 8141 DAB, 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ......................9

*Amchem Prods., Inc.* v. *Windsor*,
   521 U.S. 591 (1997) ...............................................................................................6

*Bais Yaakov of Spring Valley v. Educ. Testing Serv.*,
   No. 13-CV-4577, 2017 U.S. Dist. LEXIS 70318 (S.D.N.Y. May 8, 2017) .............5

*Baranski v. NCO Fin. Sys., Inc.*,
   No. 13 CV 6349, 2014 WL 1155304 (E.D.N.Y. Mar. 21, 2014) ............................5

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) ..............................................................12, 17

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979)..................................................................................16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)........................................10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................................11, 12

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016).............................................................................................5

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781, 806 (N.D. Ill. 2015) ............................................................15

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
   No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) ......................................................13

*CE Design, Ltd. v. Exterior Sys., Inc.*,
   No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) ........................................................13

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ..................................................................18

*In re Crazy Eddie Sec. Litig.*,
   824 F. Supp. 320 (E.D.N.Y. 1993) ..............................................................12, 17

*Cummings v Sallie Mae*,
   1:12-cv-9984 (N.D. Ill.) ......................................................................................13

*De Los Santos v Millward Brown Inc.*,
   13-cv-80670 (S.D. Fla. Sept. 11, 2015) ..............................................................13

*Desai et al. v. ADT Sec. Servs., Inc.*,
   Case No. 1:11–cv–1925 (N.D. Ill. June 21, 2013)........................................13, 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ......................................6

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-CV-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)........................15

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................12, 18

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) ......................................................13

*Gager v. Dell Fin. Servs., LLC*,
   727 F.3d 265 (3d Cir. 2013)................................................................................18

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ..............................................................................16

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)......................................................................10, 13, 14

*Green v. Serv. Master on Location Servs. Corp.*,
   No. 07 C 4705, 2009 U.S. Dist. LEXIS 53297 (N.D. Ill. June 22, 2009) ...............7

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
    Case No. 1:13–cv–21016) (S.D. Fla. June 24, 2015) ............................................13

*Hageman v. AT & T Mobility*
    LLC, No. CV 13-50, 2015 WL 9855925 (D. Mont. Feb. 11, 2015)............................10, 12, 18

*Hanley v. Fifth Third Bank*,
    No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) ...........................................13

*Hinman, v. M & M Rental Ctr., Inc.*,
    No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) ............................................13

*Holtzman v. CCH*,
    No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) ..........................................13

*Ikuseghan v. Multicare Health Sys.*,
    No. C14-5539, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) .........................10

*Johansen v. Vivant, Inc.*,
    No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) .................................5

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
    No. 08CV3610, 2015 WL 2383358 (D.N.J. May 18, 2015)................................10

*Leyse v. Lifetime Entm't Servs.*,
    171 F. Supp. 3d 153 (S.D.N.Y. Mar. 17, 2016) .......................................5

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 CIV.1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................12

*Locklear Elec., Inc. v. Norma L. Lay*,
    No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010)...........................................13

*Maley v. Del Global Tech. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................12, 15, 16, 17

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................12, 17, 19

*Martin v. Dun & Bradstreet, Inc.*,
    No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014)..........................................13

*Mey v. Pinnacle Sec., LLC*,
    No. 5:11CV47, 2012 WL 4009718 (N.D. W.Va. Sept. 12, 2012)...........................4

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06 CIV.4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...........................12

*In re: Monitronics Int'l, Inc.*,
　MDL No. 1:13-MD-2493, 2016 WL 7413495 (N.D. W.Va. Dec. 22, 2016) ...........................4

*Paldo Sign and Display Company v. Topsail Sportswear*, *Inc.*,
　No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011)..........................................................................13

*Reo v. Caribbean Cruise Line, Inc.*,
　No. 1:14 CV 1374, 2016 WL 1109042 (N.D. Ohio Mar. 18, 2016).........................................5

*Romero v. Dep't Stores Nat'l Bank*,
　199 F. Supp. 3d 1256 (S.D. Cal. 2016)....................................................................................6

*Saragusa v. Countrywide*,
　No. CV 14-2717, 2016 WL 1059004 (E.D. La. Mar. 17, 2016)..............................................4

*Satterfield v. Simon & Schuster, Inc.*,
　569 F.3d 946 (9th Cir. 2009) .................................................................................................18

*Savoie v. Merchants Bank*,
　166 F.3d 456 (2d Cir. 1999)............................................................................................11, 12

*Spokeo, Inc. v. Robins*,
　136 S. Ct. 1540 (2016)...........................................................................................................5, 6

*Sullivan* v. *DB Investments, Inc.*,
　667 F.3d 273 (3d Cir. 2011)....................................................................................................6

*In re Sumitomo Copper Litig.*,
　74 F. Supp. 2d 393 (S.D.N.Y. 1999).................................................................................11, 18

*Taft v. Ackermans*,
　No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)..............................................15

*Thomas Krakauer v. Dish Network, L.L.C.*,
　Civil Action No. 1:14-CV-333 (M.D.N.C. Jan. 24, 2017) ....................................................17

*Thomas v. Taco Bell Corp.*,
　879 F. Supp. 2d 1079 (C.D. Cal. 2012) ..................................................................................4

*Vandervort v. Balboa Capital Corp.*,
　8 F. Supp. 3d 1200 (C.D. Cal. 2014) ....................................................................................13

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
　271 F.R.D. 668 (D. Wyo. 2011) ..............................................................................................6

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
　274 F.R.D. 229 (S.D. Ill. 2011) ..............................................................................................6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2001) ..................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................10, 11

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ..........................................................16

*Weng v. T&W Rest., Inc.*,
    No. 15-CV-08167, 2016 U.S. Dist. LEXIS 83217 (S.D.N.Y. June 22, 2016) ...................2, 11

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ...........................................................16

**Statutes**

47 U.S.C. § 227(b)(3)(B) ....................................................................................1

47 U.S.C. § 227(b)(3)(C) ....................................................................................1

47 U.S.C. § 227 *et seq.*............................................................................ *passim*

## I.  INTRODUCTION

In the face of a stalwart defense and real litigation risk, Plaintiff and its counsel have achieved an excellent settlement of this Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") litigation that requires Defendant New York Life Insurance Company ("NYLIC") to pay $3,350,000 into a common fund for the benefit of the Settlement Class, which comprises 25,830 individuals. This per-class-member award of $129.69 exceeds the majority of TCPA class settlements. In fact, Class Counsel assembled data from 70 TCPA class action settlements in federal court, and the average recovery for Class Members in those settlements was $100.98, with a median recovery of $15.53. *See* Exhibit 1 – Compilation of TCPA Settlements in Federal Court.

In compliance with the Court's Preliminary Approval Order (ECF 33), notice was sent by June 16, 2016 and Settlement Class Members have until August 15, 2017 to submit their claim forms, object, or be excluded from or opt out of the Settlement Class. Based on a 10% claims rate, which is a conservatively high approximation for these types of actions, Class Counsel estimates that each claimant will receive $815, which exceeds the complete recovery a plaintiff could receive for a negligent violation of the TCPA. *See* 47 U.S.C. § 227(b)(3)(B) (allowing for a $500 recovery). *See* Dkt. No. 35, Declaration of Anthony Paronich ("Paronich Decl.") at ¶ 10. In fact, to recover more than $500, a plaintiff has to demonstrate that a defendant "willfully or knowingly violated this subsection," and even then, an increase from $500 is within "the discretion of the Court." *See* 47 U.S.C. § 227(b)(3)(C); *id.* at ¶ 11. Such a finding would be unlikely in this action given the evidence regarding the telemarketing campaign at issue, which conflicted with NYLIC's policies regarding outbound telemarketing calls. *Id.* The settlement further benefits Settlement Class Members by requiring NYLIC to implement enhanced compliance measures to prevent future TCPA violations. *See* Dkt. No. 26-1 ("Settlement

Agreement") § 2.2.

This settlement is the result of the sustained efforts of experienced and knowledgeable Class Counsel, whose participation in this litigation came with considerable financial risk. As compensation, Class Counsel seek one-third of the common fund, equaling up to $1,116,666, and an award of costs estimated to be $34,500. Class Counsel submit that the attorneys' fees sought are reasonable under the circumstances of the case, including the work devoted to the case, the risks they faced in continuing the litigation in the face of an unfaltering defense and potential regulatory intervention, and the outstanding results they obtained for the Class. As this Court has previously held, "a 'percentage of fund' contingency fee agreement can encourage early settlement of a case, which may, in turn, result in a higher award for counsel than they would achieve under a lodestar analysis . . . so long as the fee otherwise falls within an acceptable range." *Weng v. T&W Rest., Inc.*, No. 15-CV-08167, 2016 U.S. Dist. LEXIS 83217, at *9-10 (S.D.N.Y. June 22, 2016) (Moses, J.). As outlined above, and discussed in detail below, this settlement far exceeds the "acceptable range."

Finally, Class Counsel seek approval of an incentive award in the amount of $10,000 for the Class Representative. The requested fees, costs, and incentive award are reasonable and in line with the Second Circuit's requirements for approval. For these reasons, Class Counsel respectfully submit that theirs requested attorney's fees and incentive award to the Class Representative should be approved.

## II.  ARGUMENT

### A.    The Settlement Represents an Outstanding Result for the Class

The Settlement provides that NYLIC will pay $3,350,000 into a Settlement Fund from which all Settlement Class Members will have the opportunity to make a claim. *See* Settlement Agreement at §§ 2.1-2.3. The class comprises 25,830 individuals. Dkt. No. 27, Affidavit of

Anthony Paronich at ¶ 8. The amount of each claimant's cash payment will be based on a pro rata distribution and will depend on the number of valid and timely claims. Settlement Agreement at § 2.3. Settlement Class Member awards are estimated to be $815.00 after deductions for the requested attorneys' fees and costs, the requested service award to the named Plaintiff, and the cost of notice and claims administration. Dkt. No. 31 at *2.

To receive a cash payment, Settlement Class Members need only complete a simple claim form and provide it to the Claims Administrator via the website or first-class mail. After they receive notice, Settlement Class Members will have until August 15, 2017 to submit their claim forms, object to the Settlement, or be excluded from or opt out of the Class. *See* Dkt. No. 33. If any amounts remain in the Settlement Fund as a result of uncashed checks, those funds will be directed to a c*y pres* recipient appointed by the Court. *See* Settlement Agreement § 2.3. None of the Fund will revert to NYLIC. The Settlement achieved by Class Counsel therefore provides exceptional monetary relief.

In addition to the extraordinary cash benefit being offered to Settlement Class Members, pursuant to the Settlement, NYLIC has implemented a series of enhanced compliance measures designed to ensure that the allegations of the Complaint do not recur. Specifically, NYLIC has developed and sent to its employees a telemarketing-specific compliance document that all employees are required to acknowledge and sign as a condition of their employment. *See* Settlement Agreement § 2.2. Any employee who fails to execute and return the document has had his or her access to NYLIC's system suspended. *Id.* In addition, NYLIC sends all of its field agents quarterly compliance communications that remind them of their obligations under the terms of their respective contracts with NYLIC to comply with telemarketing regulations. *Id.* Finally, NYLIC's agent handbook, which is required to be reviewed and signed before any

access is given to the NYLIC system, has been enhanced to further address the specifics of telemarketing law restrictions. *Id.*

**B.   The Action Involved Considerable Risk and a Complex Defense**

Class Counsel undertook representation of this matter on a pure contingency-fee basis. *See* Paronich Decl, ¶ 13; Dkt. No. 36, Declaration of Edward Broderick ("Broderick Decl.") at ¶ 11; Dkt. No. 37, Declaration of Matthew McCue ("McCue Decl.") at ¶ 12; Dkt. No. 38, Declaration of Kim Richman ("Richman Decl.") at ¶ 13. As a result, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment, all while devoting time to this case that otherwise could have been spent on other matters. *Id.*

The primary risk that Plaintiff faced was that it could lose on the merits. Paronich Decl. ¶ 16. NYLIC steadfastly denies liability for pre-recorded calls made by a third-party, and asserts that it should not be vicariously liable under agency theories. *Id.; See In re: Monitronics Int'l, Inc.*, MDL No. 1:13-MD-2493, 2016 WL 7413495 (N.D. W.Va. Dec. 22, 2016) (granting motion for summary judgment on vicarious liability theory); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) (same*); see also Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718, at *5 (N.D. W.Va. Sept. 12, 2012) (granting summary judgment on TCPA claim because plaintiff failed to show defendant had "ability to control the manner and means of the calls made on its behalf"). If NYLIC is able to convince this Court, or a jury, that Plaintiff's vicarious liability allegations were overstated or unfounded, NYLIC would eliminate the lawsuit altogether. Paronich Decl. ¶ 16.

NYLIC additionally argued that the dialing system used did not qualify as an Automatic Telephone Dialing System—which presented a risk to Plaintiff's case. *See Saragusa v. Countrywide*, No. CV 14-2717, 2016 WL 1059004, at *4 (E.D. La. Mar. 17, 2016)  (dismissing

complaint because plaintiff could not allege an ATDS was used.)[1] An ongoing challenge to Federal Communications Commission ("FCC") rules regarding the TCPA, including rules on what constitutes an automatic dialer and how or when prior express consent is obtained presented a further risk to recovery. *See ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed Sept. 21, 2015) (pending appeal of action by multiple industry groups challenging a July 2015 FCC ruling regarding the TCPA). The outcome of this appeal could alter the legal landscape to the Settlement Class Members' detriment.

Beyond these risks, the possibility of summary dismissal of this class action was also substantial given the Supreme Court's decisions in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Even after the Supreme Court's decisions in those cases, the legal landscape remains uncertain. For example, some post-*Gomez* courts have held that even a plaintiff who rejects a settlement offer can have a case dismissed by virtue of an adverse judgment entered by the court. *See, e.g., Leyse v. Lifetime Entm't Servs.,* 171 F. Supp. 3d 153, 155-156 (S.D.N.Y. Mar. 17, 2016), *affirmed in summary order, Leyse v. Lifetime Entm't Servs, LLC¸* 2017 U.S. App. 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017)*; but see, Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, No. 13-CV-4577 (KMK), 2017 U.S. Dist. LEXIS 70318, at \*48-49 (S.D.N.Y. May 8, 2017) (refusing to permit deposit of funds to moot potential class claims).

---

[1] *See also Johansen v. Vivant, Inc.,* No. 12 C 7159, 2012 WL 6590551, at \*3 (N.D. Ill. Dec. 18, 2012) (dismissing complaint when plaintiff failed to enhance the complaint with anything more than the language already available in the statute.); *Baranski v. NCO Fin. Sys., Inc.,* No. 13 CV 6349 ILG JMA, 2014 WL 1155304, at \*6 (E.D.N.Y. Mar. 21, 2014) (holding that "Plaintiff must do more than simply parrot the statutory language" defining ATDS, and noting that the vast majority of courts to have considered the issue have found that "a bare allegation that defendants used an ATDS is not enough"); *Reo v. Caribbean Cruise Line, Inc.,* No. 1:14 CV 1374, 2016 WL 1109042, at \*4 (N.D. Ohio Mar. 18, 2016) (dismissing case for failure to plead ATDS after two years of discovery).

Similarly, following *Spokeo*, some courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See, e.g.*, *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1264 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.") A decision from this Court on either of those issues against the Plaintiff would have ended this litigation.

Further, Plaintiff faced the risks inherent in seeking certification of the proposed class. While this Court certified a class for settlement purposes, "[i]n the settlement context, class certification criteria are easily met because the class is unified by a common interest in a reasonable recovery." *In re EVCI Career Colls. Holding Corp. Sec. Litig.,* 2007 U.S. Dist. LEXIS 57918, at *34-35 (S.D.N.Y. July 27, 2007); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *Sullivan* v. *DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (*en banc*) (same). Thus, the mere fact that the Court certified settlement classes have been certified does not mean that class certification was a certainty following adversarial briefing.

Indeed, class certification is not automatic in TCPA cases. *Compare, e.g.*, *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]") and *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized

inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted), with *Green v. Serv. Master on Location Servs. Corp.*, No. 07 C 4705, 2009 U.S. Dist. LEXIS 53297, at *6 (N.D. Ill. June 22, 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.") (internal citations omitted) and *Agne v. Papa John's Int'l., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Finally, as in any case, there is a substantial risk of losing at trial even if the class is certified. Moreover, even where Plaintiff won on the merits, one or more appeals would be likely. Thus, any recovery would be jeopardized and delayed for years. In contrast, this Settlement provides guaranteed and substantial relief without further delay.

## C.     Class Counsel Thoroughly and Efficiently Investigated the Class Claims

As this Court held in its preliminary approval order, "the Court concludes that the Agreement appears to be the product of adequate investigational efforts." Dkt. No. 31 at *3. The Plaintiff's exploration into the circumstances of the telemarketing campaign through its own investigation and discovery are described below.

NYLIC has different levels of agents. A provisional or "PTAS" agent is the most junior of the NYLIC agent employees. It is someone who is considering becoming a full-time agent and is only required to work part-time. *See* Dkt. No. 26-2, *Christopher Tebeau Deposition* at 28:16-20. Bardia Hariri began his employment with NYLIC as a PTAS agent. *See* Dkt. No. 26-3, *Bardia Hariri Deposition* at 13:20-25. One way PTAS agents try to solicit business is through the use of telemarketing. *Tebeau Deposition* at 35:12-15. In an effort to ensure that their agents comply with telemarketing restrictions, NYLIC sends communications to agents to make them

aware of telemarketing laws and as the tools available to them to facilitate compliance. *Tebeau Deposition* at 21:18-24. Additionally, PTAS agents are required to attend classes that relate to restrictions on telemarketing and applicable laws. *Tebeau Deposition* at 33:22-24. However, shortly after beginning his employment with NYLIC, but prior to his completion of these courses relating to telemarketing restrictions, Mr. Hariri unilaterally hired a third party company, LiveTransfers.com ("LiveTransfers"). *Hariri Deposition* at 17-18:25-2.

Mr. Hariri located LiveTransfers while doing an internet search that focused on generating new business prospects. *Hariri Deposition* at 28:16-19. Mr. Hariri hired LiveTransfers to make telemarketing calls with pre-recorded messages, with a script he provided, to find people who were potentially interested in NYLIC's services. *Hariri Deposition* at 30:16-20. If an individual responded to the pre-recorded message, LiveTransfers would then automatically send the call to Mr. Hariri's phone using a dedicated telephone number so he would know the call was coming from a LiveTransfers prospect. *Hariri Deposition* at 27:17-21.

Abante Rooter and Plumbing Inc. ("Abante") is a small business that is owned by Fred Heidarpour. Mr. Heidarpour, like many consumers nationwide, has received automated and unwanted telemarketing calls despite the strict prohibitions on such practices under the TCPA. In fact, in an extra effort to avoid such calls, Mr. Heidarpour placed his Abante cell phone number on the National Do-Not-Call-Registry. However, despite Mr. Heidarpour's registration, and despite the fact that the number at issue was registered to a cellular telephone service, he received a pre-recorded as part of the arrangement between Mr. Hariri and LiveTransfers. *See* Dkt. No. 1 at ¶ 16-28.

Through discovery, Plaintiff obtained Defendants' telemarketing policies and practices, correspondence, and contracts relating to the relationship between Mr. Hariri and LiveTransfers,

as well as the calling records of all pre-recorded calls that LiveTransfers made for Mr. Hariri during their relationship. *See* Dkt. No. 27, Paronich Declaration at ¶ 5. Plaintiff then obtained an expert witness to evaluate the calling records to identify the scope of the putative class. Plaintiff's expert determined that 25,830 individuals received pre-recorded calls on their cellular telephones or received multiple calls to a residential number that was on the National Do-Not-Call Registry. *Id.* at ¶ 8.

By the time the parties commenced settlement negotiations, they fully understood the scope of the class, the strengths and weaknesses of their respective claims and defenses, and the extent of class-wide damages. *Id.* ¶ 9. The parties mediated with the Honorable Morton Denlow (Ret.) of JAMS in Chicago, resulting in the settlement that this Court approved. This Court's prior holding that there was "adequate factual investigation" was well founded, as the settlement was the product of substantial work and investigation by Plaintiff's counsel.

**D.   The Requested Service Award To The Named Plaintiff Should Be Approved**

Pursuant to the Settlement Agreement, and subject to Court approval, Class Counsel request approval of an incentive award of $10,000 for Plaintiff in recognition of the services rendered on behalf of the Class. *See* Settlement Agreement at § 8.2. This award is reasonable given the significant contribution Plaintiff has made to advance the prosecution and resolution of the lawsuit, and appreciating that without Plaintiff's involvement, there would be no recovery for anyone.

"Courts . . . routinely award . . . an incentive for such Plaintiff to remain involved in the litigation and to incur such expenses in the first place." *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 CIV. 8141 DAB, 2012 WL 345509, *6 (S.D.N.Y. Feb. 2, 2012) (citation omitted) (internal quotation marks omitted). Here, Plaintiff's services were instrumental to the initiation and prosecution of this action, and it expended considerable time and effort to assist Class Counsel

with this case. Plaintiff not only informed counsel of the predicate facts, it also provided counsel with relevant documents in its possession and timely answered inquiries from its attorneys. Paronich Decl. ¶ 9. Moreover, the requested service awards are reasonable and well within the range awarded by courts in cases involving TCPA violations. *See, e.g., Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an incentive award of $15,000 to be reasonable); *Hageman v. AT & T Mobility* LLC, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 incentive award).

Accordingly, the Court should grant the requested service awards based on the significant risk and work that Plaintiff undertook on behalf of the Class.

**E.    Class Counsel's Attorneys' Fees And Costs Should Be Approved**

Plaintiff also requests that the Court approve its request for attorneys' fees of one-third of the Settlement Fund ($1,116,666) and reimbursement of litigation costs estimated to be $34,500.

1.    **The Percentage of the Fund Method Should Be Applied Here**

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar and percentage of the fund method, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Courts prefer the percentage method to the lodestar method for several reasons. First, the

percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2001) (finding that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Second, the percentage method is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate its attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("[T]he percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with its clients.").

Third, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. This method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and additional citation omitted). In fact, this Court has recognized that "a 'percentage of fund' contingency fee agreement can encourage early settlement of a case." *Weng v. T&W Rest., Inc.*, No. 15-CV-08167, 2016 U.S. Dist. LEXIS 83217, at *9 (S.D.N.Y. June 22, 2016) (Moses, J.). In that regard, the percentage method discourages plaintiffs' lawyers from running up its billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of

the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.").

Finally, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie*, 166 F.3d at 461 n.4. Indeed, district courts in the Second Circuit have consistently awarded one-third of the fund in common fund class settlements. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (awarding one-third of the recovery); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 CIV.4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188–89 (W.D.N.Y. 2005) (awarding 38.26%); *Strougo*, 258 F. Supp. 2d at 262 (awarding 33.33%); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370–71 (S.D.N.Y. 2002) (awarding 33.33%; noting "modest multiplier of 4.65 [was] fair and reasonable"); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding 33.33%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding 33.8%); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CIV.1262 RWS, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("In this district alone, there are scores of . . . cases where fees . . . were awarded in the range of 33.3 percent of the settlement fund.").

Moreover, district courts across the country have awarded 33% of the common fund in TCPA cases. *See, e.g., Hageman*, 2015 WL 9855925, at *4 (awarding $15 million in fees, or one-third of the $45 million common fund); *Allen v. JPMorgan Chase Bank, N.A.*, 13-cv-8285, Dkt. No. 98 (N.D. Ill. Nov. 3, 2015) (awarding one-third fee award on $10,200,000 settlement);

*De Los Santos v Millward Brown Inc.*, 13-cv-80670-DPG, Dkt. No. 84 (S.D. Fla. Sept. 11, 2015) (awarding one-third of $11 million settlement for attorneys' fees); *Cummings v Sallie Mae*, 1:12-cv-9984, Dkt. No. 91 (N.D. Ill.) (awarding one-third of the $9,200,000 fund for fees); *Desai et al. v. ADT Sec. Servs., Inc.*, Case No. 1:11–cv–1925, Dkt. No. 243 (N.D. Ill. June 21, 2013) (awarding fees of one-third of $15 million fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13–cv–21016), Dkt. No. 95 (S.D. Fla. June 24, 2015) (awarding fees and costs of one-third of the $4,500,000.00 settlement fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% of $3.3 million ceiling award).[2]

Based on the foregoing, Plaintiff respectfully requests that the Court use the percentage of fund method here.

2.      **The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund**

In determining the reasonableness of fee applications, courts consider six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the

---

[2] Additional TCPA rulings awarding one third for fees follow: *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215, Dkt. No. 63 (N.D. Ill. Jan. 16, 2014) (awarding one-third fee); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (awarding one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear*, *Inc.*, No. 1:08-cv-05959, Dkt. No. 116 (N.D. Ill. Dec. 21, 2011) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (same); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same); *e.g., Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. v. Verizon Wireless,* No. 03-CV-161, 2007 U.S. Dist. LEXIS 97153, at *6-7 (M.D. La. 2007) (awarding in excess of 35% of the common fund plus costs).

settlement; and (6) public policy considerations. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 3.  Class Counsel's Time And Labor

Class Counsel have actively litigated this case, and the time they dedicated supports their requested fee. Class Counsel have submitted declarations and detailed at length in their motion in support of the settlement the work done investigating the case. Class Counsel also deposed several key witnesses. *See* Paronich Decl. ¶ 17. This strategy permitted Class Counsel to obtain information about the strengths and weaknesses of Plaintiff' claims efficiently and effectively. *Id.* In fact, as this Court held in its Order preliminary approving the class settlement, "the Court concludes that the Agreement appears to be the product of adequate investigational efforts." Dkt. No. 31 at *3.

### 4.  The Litigation's Magnitude And Complexity

The second *Goldberger* factor, which addresses "the magnitude and complexities of the litigation," also supports approval of the requested fee. *Goldberger*, 209 F.3d at 50. As noted above, this litigation was complex and multifaceted. Further, Class Counsel spent considerable time and effort reviewing thousands of pages of documents and took numerous depositions in order to determine and understand NYLIC's telemarketing protocols and how the automated telemarketing calls were sent through a third party. Plaintiff also worked with multiple database experts to determine the scope of this litigation. Furthermore, regulatory involvement and appeals from regulatory orders in TCPA litigation created a constantly shifting dynamic for potential liability. If the litigation had not settled, Class Counsel would have faced additional obstacles as NYLIC continued to mount a vigorous defense, including a trial that would require substantial fact and expert testimony, and possible appeals relating to NYLIC's liability. *See*

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *20 (S.D.N.Y. Sept. 9, 2015) (awarding fees of one-third of cash component of settlement due, in part, to the complexity of issues that required expert analysis). This factor favors approval of Class Counsel's petition.

    5.    **The Risks Of Litigation**

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). Class Counsel prosecuted this matter on a pure contingency basis, agreeing to advance all necessary expenses and to receive a fee only if there was a recovery. *See* Paronich Decl. ¶ 13. Class Counsel have invested considerable time and money prosecuting this action; their out-of-pocket costs are approximately $34,500. Class Counsel diligently reviewed NYLIC's records and records subpoenaed from third parties; pursued expert discovery to analyze calling records and databases to identify class members and calculate their damages and deposed key witnesses. *See* Paronich Decl. at ¶ 17. In doing so, "Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated." *Maley*, 186 F. Supp. 2d at 372 (citation omitted).

Moreover, TCPA cases are, by their very nature, risky. The TCPA does not provide for attorneys' fees, unlike other statutory claims, and "the average TCPA case carries a 43% chance of success." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015). This case is no different. As summarized above, Plaintiff faced the threshold issue of NYLIC's liability, as NYLIC did not itself make telemarketing calls to class members. Recent Supreme Court decisions have left open the possibility that the Plaintiff would not have Article III standing to pursue its claim in federal court, which was required to compensate this

nationwide class. Furthermore, the appeal of a recent FCC Order also made tangible the risk of no recovery for the class. Finally, class certification motions are particularly complicated and difficult in TCPA cases. *See, e.g., Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326-27 (5th Cir. 2008) (noting that consent is an essential individual issue under the TCPA that makes class certification inappropriate.)

Even if its motion to certify the class were successful, Plaintiff would face a future motion for summary judgment on the issue of liability, because NYLIC insists that it should not be held vicariously liable for automated telemarketing calls sent by a third party. If Plaintiff could overcome this hurdle and succeed in bringing the case to verdict, NYLIC would likely appeal, which "could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Thus, there was substantial risk that the Settlement Class would be left with nothing. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

For these reasons, this factor also supports Class Counsel's attorneys' fee request.

### 6.   **Quality Of The Representation**

"The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the Class through the efforts of such counsel." *Maley*, 186 F. Supp. 2d at 373. Class Counsel are experienced class action litigators who have successfully prosecuted complex consumer cases, and who have become particularly skilled and experienced in litigating TCPA class actions. *See* Paronich Decl. at ¶ 12; Broderick Decl. at ¶ 10;

McCue Decl. at ¶ 11; Richman Decl. at ¶ 12. In fact, Plaintiff's counsel were part of a trial team that conducted the only trial of a certified class action in a TCPA case in federal court, which resulted in a $20,446,400 verdict for approximately 18,000 class members after a five-day trial. *See Thomas Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333, Dkt. No. 292 (M.D.N.C. Jan. 24, 2017). This award was later trebled by the Court to $61,339,200. *Id.* at Dkt. No. 338 (May 22, 2017).

Class Counsel efficiently applied their skills and experience to obtain excellent relief for the Class. Each Settlement Class Member who submits a claim will receive a pro rata share of the Settlement Fund, which will be allocated to Settlement Class Member claims after settlement expenses are deducted.[3] The award of $129.69 per Settlement Class Member exceeds the majority of TCPA class settlements. Indeed, Class Counsel have compiled 70 TCPA class settlements in federal court, which resulted in an average recovery of $100.98 per class member, with a median recovery of $15.53. *See* Exhibit 1.

Therefore, this factor weighs in favor of granting the requested fees.

7.    **The Fee Is Reasonable In Relation To The Settlement**

Class Counsel's request for one-third of the fund is "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere." *In re Marsh ERISA Litig.*, 265 F.R.D. at 149 (awarding $11,665,500 fee out of $35 million settlement fund); *Maley*, 186 F. Supp. 2d at 370–71 (awarding $3,832,950 fee out of $11.5 million settlement fund); *Becher*, 64 F. Supp. 2d at 182 (awarding $2,583,333 fee out of $7,750,000 settlement fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. at 326 (awarding $14.2

---

[3] Assuming the Court grants the requested attorneys' fees and litigation expenses, Plaintiff estimate that each Settlement Class member who submits a claim will receive approximately $815, based on a 10% claim rate, which is conservatively high for this type of action.

million fee out of $42 million settlement fund); *Hageman*, 2015 WL 9855925, at *4 (awarding $15 million fee out of $45 million common fund in a TCPA case); *Desai et al. v. ADT Sec. Servs., Inc*., Case No. 1:11–cv–1925 (N.D. Ill. June 21, 2013), Doc. 243 (awarding fees of one-third of a $15-million-dollar fund in a TCPA case). Therefore, this factor also weighs in favor of granting the requested fees.

        8.    **Public Policy Considerations**

Public policy considerations also weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. When individuals' damages are small, "it [is] less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, which would certainly exceed its recoveries manifold." *Frank,* 228 F.R.D. at 181. Thus, "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *In re Colgate-Palmolive Co. ERISA Litig*., 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

"The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) (citing S. Rep. 102–178, at 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972). Its purpose is to curb unwanted texts and calls that are a nuisance and an invasion of consumers' privacy. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). In obtaining significant monetary compensation for Settlement Class Members on an issue that is important to consumers, Class Counsel fulfilled the remedial purpose of the TCPA. Thus, this factor weighs

in favor of Class Counsel's request for fees.

**F.      Class Counsel Is Entitled To Reimbursement Of Its Litigation Expenses**

"It is well-established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses." *In re Marsh ERISA Litig*., 265 F.R.D. at 150 (citation omitted). Class Counsel seek reimbursement of out-of-pocket litigation expenses, totaling approximately $34,500, which primarily comprise expert fees that Plaintiff's counsel incurred analyzing calling data, identifying Settlement Class Members, and determining the number of violations. The remaining amount is attributable to general litigation expenses such as travel, transcript costs, and mediation expenses. *See* Paronich Decl. ¶ 19; Broderick Decl. at ¶ 13; McCue Decl. at ¶ 14; Richman Decl. at ¶ 16. Counsel expended these out-of-pocket costs without any assurance that they would ever be repaid. These out-of-pocket costs were necessary and reasonable to secure the resolution of this litigation, and should be recouped. *In re March ERISA Litig.,* 265 F.R.D at 150 ("The expenses that may be reimbursed from the common fund encompass 'all reasonable' litigation-related expenses.").

### III.  CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court approve its motion for payment of service awards, attorneys' fees, and costs.

Dated: June 23, 2017                    Respectfully submitted,

                                        BRODERICK & PARONICH, P.C.

                        By:     /s/ *Anthony I. Paronich*
                                Anthony Paronich
                                Email: anthony@broderick-law.com
                                Edward A. Broderick
                                Email: ted@broderick-law.com
                                99 High Street, Suite 304
                                Boston, Massachusetts 02110
                                Telephone: (508) 221-1510

                                Kim E. Richman
                                Email: krichman@richmanlawgroup.com
                                RICHMAN LAW GROUP
                                81 Prospect Street
                                Brooklyn, New York 11201
                                Telephone: (212) 687-8291
                                Facsimile: (212) 687-8292

                                Matthew P. McCue
                                Email: mmccue@massattorneys.net
                                THE LAW OFFICE OF MATTHEW P. MCCUE
                                1 South Avenue, Suite 3
                                Natick, Massachusetts 01760
                                Telephone: (508) 655-1415
                                Facsimile: (508) 319-3077

                                *Attorneys for Plaintiff and the Settlement Class*

<u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on June 23, 2017, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to counsel of

record.

/s/ *Anthony I. Paronich*
Anthony Paronich