**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>NEW YORK LIFE INSURANCE COMPANY<br>               Defendant. | No. 1:16-cv-03588 |

**PLAINTIFF'S MOTION FOR FINAL**
**<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I. INTRODUCTION ................................................................................................ 1

II. AUTHORITY AND ARGUMENT ..................................................................... 2

    A.    The settlement is procedurally fair and should be approved. ................................ 3

    B.    The settlement is substantially fair and meets the Grinnell standards for class action settlement approval.......................................................................... 5

        1.    Litigation through trial would be complex, costly, and long ..................... 6

        2.    The reaction of the Class included no exclusions or objections from any class member. ............................................................................ 7

        3.    Discovery has advanced far enough to allow the parties to responsibly resolve the case ................................................................... 9

        4.    Plaintiff would face real risks if the case proceeded................................... 9

        5.    Establishing a class and maintaining it through trial would not be simple ..................................................................................................... 11

        6.    Defendants' ability to withstand a greater judgment is a neutral factor ........................................................................................................ 12

        7.    The settlement fund is substantial in light of the possible recovery and the attendant risks of litigation ........................................................... 12

    C.    Class members received the best notice practicable ............................................ 15

    D.    The Settlement Class should be finally certified ................................................ 17

III. CONCLUSION.................................................................................................. 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ....................................14

*Agne v. Papa John's Int'l, Inc.*,
286 F.R.D. 559 (W.D. Wash. 2012) ......................................................................12

*Agne v. Papa John's International Inc.*,
No. 2:10-cv-01139 (W.D. Wash. Oct. 8, 2013)......................................................13

*Bais Yaakov of Spring Valley v. Educ. Testing Serv.*,
No. 13-CV-4577 (KMK), 2017 U.S. Dist. LEXIS 70318 (S.D.N.Y. May 8,
2017) ......................................................................................................................11

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979)....................................................................................7

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) .............................................................................................10

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007).....................................................................................9

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................ *passim*

*Cubbage v. Talbots, Inc.*,
No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012)...............................................14

*Cunningham v. Kondaur Capital*,
No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014)...........................10

*Cunningham v. Kondaur Capital*,
No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) ..................10

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).......................................................................................7

*Desai v. ADT Sec. Servs., Inc.*,
No. 1:11-cv-01925  (N.D. Ill. Feb. 14, 2013) .......................................................14

*In re Enhanced Recovery Co.*,
No. 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014)..........................................14

*Estrada v. iYogi, Inc.*,
  No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)............................14

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................3

*Flores v. Anjost*,
  No. 11 CIV. 1531 AT, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) .....................................10

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................................................12

*Franklin v. Wells Fargo Bank, N.A.*,
  No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ...........................13

*Garret v. Sharps Compliance, Inc.*,
  No. 1:10-cv-04030 (N.D. Ill. Feb. 23, 2012) ........................................................................14

*Gehrich v. Chase Bank USA, N.A.*,
  No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ..............................................14, 15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................2

*Gilliam v. Addicts Rehab Crt. Fund*,
  No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ................................13

*Grant v. Capital Mgmt. Servs.*,
  No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) ............................14

*Hicks v. Morgan Stanley & Co.*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................6

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009).....................................................................................12

*Jackson v. Caribbean Cruise Line, Inc.*,
  88 F. Supp. 3d 129 (E.D.N.Y. 2015) .....................................................................................10

*Karic v. Major Auto. Companies, Inc.*,
  No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ................................13

*Leyse v. Lifetime Entm't Servs.*,
  171 F. Supp. 3d 153 (S.D.N.Y. Mar. 17, 2016)......................................................................10

*Manouchehri v. Styles for Less, Inc.*,
  No. 14-cv-2521 NLS, 2016 WL3387473 (S.D. Cal. June 20, 2016)......................................13

*Marisol A. v. Giuliani*,
   185 F.R.D. 152 (S.D.N.Y. 1999) .....................................................................................8

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)...........................................................................................13

*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*,
   No. 1:13-cv-06897 (N.D. Ill. Jan. 15, 2015)..................................................................13

*Owens v. Freshdirect LLC*,
   No. 14 Civ. 1909 (VEC) (S.D.N.Y. Oct. 30, 2015).........................................................7

*In re Paine Webber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................................12

*Romero v. Dep't Stores Nat'l Bank*,
   199 F. Supp. 3d 1256 (S.D. Cal. 2016)..........................................................................11

*Saragusa v. Countrywide*,
   No. CV 14-2717, 2016 WL 1059004 (E.D. La. Mar. 17, 2016).....................................10

*Spillman v. RPM Pizza, LLC*,
   No. 10-cv-0349 (M.D. La. May 23, 2013).......................................................................13

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..............................................................................................10, 11

*Steinfeld v. Discover Fin. Servs.*,
   No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ...................................................................14

*Stinson v. City of New York*,
   No. 10 CIV. 4228 (RWS), 2017 WL 2544831 (S.D.N.Y. June 12, 2017) ...............................9

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).............................................................................6

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).............................................................................10

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) .......................................................................................8

*Tiro v. Pub. House Investments, LLC*,
   No. 11 CIV. 7679 CM, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)....................................6

*Velez v. Novartis Pharmaceuticals Corp.*,
   No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...........................2, 3

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
   271 F.R.D. 668 (D. Wyo. 2011) .........................................11

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229 (S.D. Ill. 2011) .........................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..........................................2, 10

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)...........................................9

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970) ....................................7

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,
   No. 1:12-cv-00780 (N.D. Ill. Oct. 30, 2013) .....................13

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008)................................7

## Rules

Fed. R. Civ. P. 23 ................................................................8

Fed. R. Civ. P. 23(e)(5)......................................................9

Fed. R. Civ. P. 23(f)..........................................................12

## Other Authorities

*Manual for Complex Litigation* (Fourth) (2010) .......................2

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2016)................3

## I.  INTRODUCTION

Plaintiff Abante Rooter and Plumbing Inc. ("Plaintiff") and Class Counsel achieved an excellent result for Settlement Class Members that requires New York Life Insurance Company ("NYLIC") to pay $3,350,000 into a common fund for the benefit of the Settlement Class, which comprises 25,830 individuals. Each of the claimants to the Settlement Fund will receive $3,238.83 if the Court grants the relief requested.[1] The settlement is the product of disputed litigation, a thorough evaluation of Plaintiff's claims and the risks of continued litigation, and contested settlement negotiations engaged in before a retired federal magistrate judge, Hon. Morton Denlow (Ret.) of JAMS in Chicago, IL. Notice of the settlement has been sent and the claims, exclusion, and objection deadlines have passed. There were no requests for exclusions and no objections by any class member.[2] The lack of opposition from the Class is evidence that the settlement is fair, reasonable, and adequate.

For the reasons set forth in this memorandum and in the papers previously submitted in support of approval, including but not limited to Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement, Conditional Certification of Class and Entry of Scheduling Order (Dkt. No. 26) and the Motion in Support of a Service Award, Attorneys' Fees and Costs (Dkt. No. 34), Plaintiff respectfully requests that the Court grant final approval of the settlement by: (1) finally certifying the Settlement Class; (2) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Settlement Class; (3) determining that adequate notice was provided to the Settlement Class; (4) approving Class Counsel's requested attorneys'

---

[1] *See* Declaration of Steven Powell ("Powell Decl.") ¶ 19, filed simultaneously with this motion.

[2] As discussed in more detail below, the *pro se* objection of Ms. Melissa Randolph should be ignored as Ms. Randolph is not a class member. *See* Powell Decl. at ¶ 18. As such, any claims that Ms. Randolph may have are not released by the Settlement.

fees of $1,116,666 and reimbursement of $34,498 in out-of-pocket litigation costs, including expert and mediation expenses; and (5) approving an award of $10,000 to the Plaintiff for his service as the Class Representative.

## II.  AUTHORITY AND ARGUMENT

A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). Approval of a class action settlement is within the Court's discretion, which "should be exercised in light of the general judicial policy favoring settlement." *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 159 (S.D.N.Y. 2011) (citation omitted). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 462 (2d Cir. 1974). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

"Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Id*; s*ee also In re EVCI Career Colleges Holding Corp. Sec. Litig*., No. 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement"). Because the settlement is both procedurally and substantively fair, it should be approved.

**A.      The settlement is procedurally fair and should be approved.**

A proposed class settlement is presumptively fair when sufficient discovery has been

provided and "the settlement is the product of arms-length negotiation, untainted by collusion."

William B. Rubenstein, *Newberg on Class Actions* § 13:45 (5th ed. 2016). The settlement here is

procedurally fair because it was reached after Class Counsel conducted a thorough investigation

of the claims and defenses, evaluated the strengths and weaknesses of those claims and defenses,

and engaged in arm's length negotiations with NYLIC, including a mediation with an

experienced mediator. In fact, this Court's preliminary approval Order recognized, "the Court

concludes that the Agreement appears to be the product of adequate investigational efforts." Dkt.

No. 31 at 3.

The Plaintiff's exploration into the circumstances of the telemarketing campaign through

its own investigation and discovery are described below. NYLIC has different levels of agents.

A provisional or "PTAS" agent is the most junior of the NYLIC agent employees, and is

someone who is considering becoming a full-time agent and is only required to work part-time.

*See* Dkt. No. 26-2, *Christopher Tebeau Deposition* at 28:16-20. Bardia Hariri began his

employment with NYLIC as a PTAS agent. *See* Dkt. No. 26-3, *Bardia Hariri Deposition* at

13:20-25. One way PTAS agents try to solicit business is through the use of telemarketing.

*Tebeau Deposition* at 35:12-15. In an effort to ensure that their agents comply with

telemarketing restrictions, NYLIC sends communications to agents to make them aware of

telemarketing laws and as the tools available to them to facilitate compliance. *Tebeau*

*Deposition* at 21:18-24. Additionally, PTAS agents are required to attend classes that relate to

restrictions on telemarketing and applicable laws. *Tebeau Deposition* at 33:22-24. However,

shortly after beginning his employment with NYLIC, but prior to his completion of these

courses relating to telemarketing restrictions, Mr. Hariri unilaterally hired a third-party

company, LiveTransfers.com ("LiveTransfers"). *Hariri Deposition* at 17-18:25-2.

Mr. Hariri located LiveTransfers while doing an internet search that focused on generating new business prospects. *Hariri Deposition* at 28:16-19. Mr. Hariri hired LiveTransfers to make telemarketing calls with pre-recorded messages, with a script he provided, to find people who were potentially interested in NYLIC's services. *Hariri Deposition* at 30:16-20. If an individual responded to the pre-recorded message, LiveTransfers would then automatically send the call to Mr. Hariri's phone using a dedicated telephone number so he would know the call was coming from a LiveTransfers prospect. *Hariri Deposition* at 27:17-21.

Abante Rooter and Plumbing Inc. ("Abante") is a small business that is owned by Fred Heidarpour. Mr. Heidarpour, like many consumers nationwide, has received automated and unwanted telemarketing calls despite the strict prohibitions on such practices under the TCPA. In fact, in an extra effort to avoid such calls, Mr. Heidarpour placed his Abante cell phone number on the National Do-Not-Call-Registry. However, despite Mr. Heidarpour's registration, and despite the fact that the number at issue was registered to a cellular telephone service, he received a pre-recorded telemarketing call as part of the arrangement between Mr. Hariri and LiveTransfers. *See* Dkt. No. 1 at ¶ 16-28.

Through discovery, Plaintiff obtained Defendant's telemarketing policies and practices, correspondence, and contracts relating to the relationship between Mr. Hariri and LiveTransfers, as well as the calling records of all pre-recorded calls that LiveTransfers made for Mr. Hariri during their relationship. *See* Dkt. No. 27, Paronich Declaration at ¶ 5. Plaintiff then obtained an expert witness to evaluate the calling records to identify the scope of the putative class. Plaintiff's expert determined that 25,830 individuals received pre-recorded calls on their cellular

telephones or received multiple calls to a residential number that was on the National Do-Not-Call Registry. *Id.* at ¶ 8.

By the time the parties commenced settlement negotiations, they fully understood the scope of the class, the strengths and weaknesses of their respective claims and defenses, and the extent of class-wide damages. *Id.* ¶ 9. The parties mediated with the Honorable Morton Denlow (Ret.) of JAMS in Chicago, resulting in the settlement that this Court approved. This Court's prior holding that there was "adequate factual investigation" was well founded, as the settlement was the product of substantial work and investigation by Plaintiff's counsel.

**B.    The settlement is substantially fair and meets the Grinnell standards for class action settlement approval.**

The settlement is substantively fair because its terms are fair, adequate, and reasonable pursuant to the analytical framework set forth by the Second Circuit in *Grinnell*, 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors in determining whether a settlement is substantially fair are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the [d]efendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463. "The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice," rather than applying the factors in a systematic manner. *Id.* at 468. Here, the *Grinnell* factors weigh in favor of final approval.

1.      Litigation through trial would be complex, costly, and long

"To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation." *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013) (citing *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). This case is no exception.

Here, continued litigation of this matter would cause additional expense and delay. Although the parties had conducted significant discovery up to this point, substantial work remained to prepare this case for trial. For example, Plaintiff obtained calling data and performed expert work, but their experts had not been deposed. Complex briefing regarding motions for class certification, summary judgment, and possibly a decertification motion remained. In the event the Class recovered a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could delay the Class recovery for years, further reducing its value. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Finally, it is likely that NYLIC would appeal any judgment creating additional risk and delay. Thus, there was substantial risk that any victory at trial would be hollow, leaving class members with nothing. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

In contrast, the settlement makes substantial monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

       2.    <u>The reaction of the Class included no exclusions or objections from any class member.</u>

"The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008). The Class Notice explained the allocation formula, an estimate of each Class Members' award, and informed Class Members of their right to object or to exclude themselves from the settlement. No Settlement Class Members requested an exclusion or filed an objection. Such a favorable reaction supports final approval. *See Owens v. Freshdirect LLC*, No. 14 Civ. 1909 (VEC), Dkt. No. 179 (S.D.N.Y. Oct. 30, 2015) (Caproni, J.) (granting final approval where 10 class members excluded themselves from settlement); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (affirming district court's conclusion that 18 objections out of 27,833 class members was a "small number"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 62 (S.D.N.Y. 2003) (approving settlement where only 19 out of forty thousand claimants lodged objections); *Marisol A. v. Giuliani*, 185 F.R.D. 152, 163

(S.D.N.Y. 1999) (holding that three objections in a class of over 100,000 was evidence of the Settlement Agreements' fairness, reasonableness, and adequacy).

There was a *pro* se objection sent to counsel (and not filed) by Ms. Melissa Randolph, which is attached as Exhibit 1. However, as attested by the claims administrator, neither Ms. Randolph or her phone number are included in the class list, and she is not a Settlement Class Member. *See* Powell Dec. at ¶ 18. As outlined above, the telemarketing campaign at issue in this case relates to the conduct of a single New York Life agent, Bardia Hariri. Mr. Hariri's efforts concentrated on generating local clients near his California location, such as the Plaintiff, a California corporation. In fact, the data that comprises the Settlement Class does not include any calls in to Florida, where Ms. Randolph resides. *Id.* Furthermore, while Ms. Randolph makes reference to "unsolicited texts", the telemarketing campaign at issue was limited to pre-recorded calls, and New York Life is not believed to have sent any "unsolicited texts", and there were certainly none sent that are included in this settlement. It appears that Ms. Randolph is simply confusing the conduct and settlement relating to New York Life with other communications she's received.[3]

As a result, Ms. Randolph is not a class member, not releasing any claims she may have, and has no standing to object. Rule 23 provides that "[a]ny class member may object" to the proposed settlement before this Court. *See* Fed. R. Civ. P. 23(e)(5). Objectors who are non-class members lack standing to object to the settlement. *Stinson v. City of New York*, No. 10 CIV. 4228 (RWS), 2017 WL 2544831, at *6 (S.D.N.Y. June 12, 2017) (citing *In re Drexel Burnham*

---

[3] As a non-Settlement Class Member who did not receive direct notice, it is possible that Ms. Randolph heard about this case after a website published a story on the settlement. *See e.g.* https://topclassactions.com/lawsuit-settlements/closed-settlements/794406-new-york-life-telemarketing-calls-class-action-settlement/ (Last Visited September 5, 2017)

*Lambert Grp., Inc.*, 130 B.R. 910, 923 & n.8 (S.D.N.Y. 1991)); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244 (2d Cir. 2007) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action."). Even if Ms. Randolph was a class member, her objection would have no merit. Ms. Randolph's objection relates to her fear that the amount of attorneys' fees in connection with the settlement would result in "taking too much of the consumer's money". However, the settlement amount for each valid claimant of $3,238.83, if all fees and expenses are approved as requested, represents an excellent result which class members would have been hard pressed to exceed in the most successful individual litigation.

      3.    <u>Discovery has advanced far enough to allow the parties to responsibly resolve the case</u>

      The third *Grinnell* factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). The extensive discovery completed by the parties here easily meets this standard. The parties litigated this case, thoroughly and effectively. Plaintiff's counsel thoroughly analyzed the factual and legal issues involved in this case. Dkt. No. 27 (Paronich Decl.) at ¶¶ 5-9. Plaintiff's counsel reviewed thousands of pages of documents, took depositions and had expert analysis done. *Id.* As this Court's preliminary approval Order recognized, "the Court concludes that the Agreement appears to be the product of adequate investigational efforts." Dkt. No. 31 at *3. This factor favors settlement approval.

      4.    <u>Plaintiff would face real risks if the case proceeded</u>

      Courts "assess the risks of litigation against the certainty of recovery offered by the Settlement" when evaluating the risks of establishing liability. *In re Telik, Inc. Sec. Litig.*, 576 F.

Supp. 2d 570, 579 (S.D.N.Y. 2008). Courts recognize that "[l]itigation inherently involves risks" and that regardless of the Plaintiff's perceived strength of a case, liability is "no sure thing." *Wal-Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Flores v. Anjost*, No. 11 CIV. 1531 AT, 2014 WL 321831, at *5 (S.D.N.Y. Jan. 29, 2014) (quoting *In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

Here, Plaintiff risked losing on the merits. NYLIC steadfastly denies liability for pre-recorded calls made by a third-party platform, and asserted that it should not be vicariously liable under agency theories. *See Jackson v. Caribbean Cruise Line, Inc*., 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015) (granting motion to dismiss on issue of vicarious liability); *see Saragusa v. Countrywide*, No. CV 14-2717, 2016 WL 1059004, at *4 (E.D. La. Mar. 17, 2016) (dismissing complaint because plaintiff could not allege an ATDS was used); *see also Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *8 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015) (same).

Beyond these risks, the possibility of summary dismissal of this class action was also substantial given the Supreme Court's decisions in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). For example, some post-*Gomez* courts have held that even a plaintiff who rejects a settlement offer can have a case dismissed by virtue of an adverse judgment entered by the court. *See, e.g., Leyse v. Lifetime Entm't Servs.,* 171 F. Supp. 3d 153, 155-156 (S.D.N.Y. Mar. 17, 2016), *affirmed in summary order, Leyse v. Lifetime Entm't Servs, LLC¸* 2017 U.S. App.2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017)*; but see, Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, No. 13-CV-4577 (KMK),

- 10 -

2017 U.S. Dist. LEXIS 70318, at *48-49 (S.D.N.Y. May 8, 2017) (refusing to permit deposit of funds to moot potential class claims). Similarly, following *Spokeo*, some courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See, e.g.*, *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1264 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.") A decision from this Court on either of those issues against the Plaintiff would have ended this litigation.

Finally, as in any case, there is a substantial risk of losing at trial even if the class is certified. Moreover, even where Plaintiff won on the merits, one or more appeals would be likely. By agreeing to the proposed settlement, Plaintiff eliminated these concerns. This factor supports final approval.

5.    Establishing a class and maintaining it through trial would not be simple

The risk of obtaining class certification and maintaining it through trial also supports final approval. Had a settlement not been reached, NYLIC would likely contend that some class members provided consent, and that individualized issues of consent preclude certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare, e.g., Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), and *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless

- 11 -

number"), *with Agne v. Papa John's Int'l, Inc*., 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Even if Plaintiff succeeded in certifying a class, NYLIC would likely seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). Settlement eliminates this risk, expense, and delay, and as such, supports final approval.

6.    <u>Defendants' ability to withstand a greater judgment is a neutral factor</u>

The Settlement Agreement provides substantial recovery for the Class Members. Nevertheless, even if NYLIC could afford to pay more, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Holocaust Litig*., 80 F. Supp. 2d at 178 n. 9). Under these circumstances, this factor is neutral and does not preclude the Court from approving the final settlement.

7.    <u>The settlement fund is substantial in light of the possible recovery and the attendant risks of litigation</u>

The determination of whether a settlement amount is reasonable does not involve the use of a "mathematical equation yielding a particularized sum." *In re Initial Pub. Offering Sec. Litig*., 671 F. Supp. 2d 467, 483–84 (S.D.N.Y. 2009) (citation omitted). "[T]he dollar amount of the settlement by itself is not decisive in the fairness determination…." *In re Paine Webber Ltd. P'ships Litig*., 171 F.R.D. 104, 131 (S.D.N.Y. 1997). Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). "Where the settlement provides 'a meaningful benefit' to the

class, settlements have been found reasonable." *Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016) (citation omitted). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable. *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks and citation omitted).

The $3,350,000 settlement amount provides much more than "a fraction of the potential recovery" to Class Members. Class Members will each receive an average net settlement payment (net of attorneys' fees, costs, service awards, and claims administration fees) of approximately $3,238.83.[4] This per claimant payout vastly exceeds many other court-approved TCPA settlements and represents an excellent result for class members. *See Manouchehri v. Styles for Less, Inc.*, No. 14-cv-2521 NLS, 2016 WL3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6,

---

[4] Plaintiff's estimate, which was disclosed on the class notice, was based on a relatively high anticipated 10% claim rate.  The claim rate of the 20,640 successfully delivered notices was 3.2%. Many approved TCPA class settlements had much lower claim rates than before the Court, which further illustrates the claim rate here was acceptable. *See Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, No. 1:12-cv-00780, Dkt. No. 69 (N.D. Ill. Oct. 30, 2013) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* No. 1:13-cv-06897, Dkt. No. 41-1 (N.D. Ill. Jan. 15, 2015) (.5% of the class made claims); *Agne v. Papa John's International Inc.*, No. 2:10-cv-01139, Dkt. No. 384 (W.D. Wash. Oct. 8, 2013) (1.6% of the class made claims); *Spillman v. RPM Pizza, LLC*, No. 10-cv-0349, Dkt. No. 241 (M.D. La. May 23, 2013) (less than 1% of the class made claims).

2015) (preliminarily approving TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (finally approving TCPA settlement where class members would receive $40 cash or $80 certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51). *See also In re Enhanced Recovery Co.*, No. 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014), Dkt. No. 123 at 1 (only injunctive relief for class) and Dkt. No. 124 (settlement granted final approval); *Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class). Indeed, Class Counsel have compiled 70 TCPA class settlements in federal court, which resulted in an average recovery of $100.98 per class member, which this settlement far exceeds. *See* Dkt. No. 34-1.

As one court noted in approving an unrelated TCPA class settlement: "[t]he essential point here is that the court should not reject a settlement solely because it does not provide a complete victory to Plaintiff, for the essence of settlement is compromise." *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016) (approving $34 million TCPA settlement for class of more than 32 million individuals with a per-claimant recovery of $52.50) (citing *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). Here, as in *Gehrich,* "[i]ndividual class members receive less than the maximum value of their TCPA

claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [NYLIC], for its part, buys peace and mitigates risk." *Id.*

In this case, the release for the class members is appropriately tailored to the claims at issue in this case and only releases the claims "arising out of the send of telemarketing calls promoting New York Life goods or services" limited to those calls sent "in affiliation with LiveTransfers.com". Dkt. No. 25-1 (Settlement Agreement) § 1.16. Thus, the settlement, which provides substantial monetary benefit with an appropriately tailored release, is more than reasonable and supports final approval.

### C.    Class members received the best notice practicable

This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. Dkt. No. 33 (Supplemental Preliminary Approval Order) at *2. This notice program has been implemented by independent claims administrator, Kurtzman Carson Consultants LLC ("KCC"). *See* Powell Decl. ¶ 1. KCC facilitated through two vendors, reverse directory searches of the 25,830 telephone numbers on the class list that lacked a corresponding name and address. *Id.*  ¶¶ 6-7.  The reverse lookup associated all but 2,814 numbers with addresses. *Id.*  ¶ 7. The reverse lookup associated 89.2% of the phone numbers with addresses, which is consistent with the success rate of reverse lookups identified in the Declaration of Jonathan S. Carameros, a Vice President at KCC (Dkt.No. 32-2) and referenced in the Court's Supplemental Preliminary Approval Order. (Dkt. No. 33). *Id.*

On June 16, 2016 KCC sent Double Sided Postcard Claim Forms ("Postcard Notices") to be printed and mailed to the 22,801 names and mailing addresses in the Class List that names

and addresses could be located for. *Id.* at ¶ 10. The Postcard Notice summarized the settlement, informed Settlement Class Members of key deadlines, including the deadline to submit claims, exclusion requests and/or objections, and referred Settlement Class Members to the Settlement Website. *Id.*, Exh. C. KCC performed address lookup and updating using the United States Postal Service National Change of Address database before mailing. *Id.* at ¶ 11.

After mailing the Postcard Notice, 2,771 notices returned as undeliverable. *Id.* KCC attempted to locate a valid mailing address for those returned as undeliverable by searching public databases. *Id.* KCC found 751 new addresses and immediately re-mailed notices to all Settlement Class Members for whom KCC obtained an updated address. *Id.* KCC also established a toll-free number dedicated to answering telephone inquiries from Class Members, and received more than 625 calls. *Id.* at ¶ 14. Furthermore, KCC established a website www.TCPASettlementNYLife.com dedicated to this matter to provide information to the Class Members and to answer frequently asked questions, and was set forth in the Notice, Summary Notice, and Claim Form. *Id.* at ¶ 13.  Visitors of the website could submit claims online and download copies of the Notice, Claim Form, and other case-related documents. *Id.* The website received more than 15,000 unique visits. *Id.*

The notice program has been successful. KCC estimates Notices reached at least 79.9% of Class Members, not accounting for visits to the website. *Id.* at ¶ 12. This direct notice program yielded an exceptionally high percentage, especially when the Federal Judicial Center considers 70%, which may include publication, to be reasonable. *See* Federal Judicial Center, Judges' Class Notice and Claims Process Checklist and Plain Language Guide, at p. 3 (2010) (considering notice efforts reaching 70% of class to be reasonable). In sum, the notice program

implemented by KCC has provided due and adequate notice of these proceedings and satisfies the requirements of due process.

**D.     The Settlement Class should be finally certified**

This Court conditionally certified the Settlement Class for settlement purposes only. Dkt. No. 33. For all the reasons set forth in Plaintiff's preliminary approval briefing and the Preliminary Approval Order, the Court should finally certify the Settlement Class.

## III.  CONCLUSION

The settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiff respectfully requests that the Court grant final approval to the settlement. A proposed Order is attached as Exhibit 2.

RESPECTFULLY SUBMITTED AND DATED this 5th day of September, 2017.

Respectfully submitted,

BRODERICK & PARONICH, P.C.

By:    /s/ *Anthony I. Paronich*
        Anthony Paronich
        Email: anthony@broderick-law.com
        Edward A. Broderick
        Email: ted@broderick-law.com
        99 High Street, Suite 304
        Boston, Massachusetts 02110
        Telephone: (508) 221-1510

Kim E. Richman
Email: krichman@richmanlawgroup.com
RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

Matthew P. McCue
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

*Attorneys for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I, hereby certify that on June 23, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ *Anthony I. Paronich*
Anthony Paronich