**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>   v.<br><br>NEW YORK LIFE INSURANCE COMPANY<br>                 Defendant. | No. 1:16-cv-03588-BCM |

**PLAINTIFF'S MOTION FOR THE AWARD OF ATTORNEYS' FEES,
LITIGATION EXPENSES, AND AN INCENTIVE AWARD FOR THE
REPRESENTATIVE PLAINTIFF AND INCORPORATED
<u>MEMORANDUM IN SUPPORT</u>**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTS .............................................................................................................. 1

III.    ARGUMENT ...................................................................................................... 2

     A.      Class Counsel's attorneys' fees and costs should be approved. ............................ 2

         1.      The percentage of the fund method should be applied here ....................... 2

         2.      The *Goldberger* factors support an award of one-third of the common
             fund. ........................................................................................................ 5

             a)      Class Counsel's time and labor. ........................................................ 5

             b)      The Litigation's Magnitude and Complexity ................................... 6

             c)      The Risks of Litigation .................................................................... 7

             d)      Quality Of The Representation ......................................................... 9

             e)      The Fee is Reasonable in Relation to the Settlement ...................... 10

             f)      Public Policy Considerations ......................................................... 11

         3.      A lodestar cross check further supports the requested fee. ...................... 12

     B.      Class Counsel are entitled to reimbursement of its litigation expenses. .............. 14

     C.      The requested incentive award for the Plaintiff should be approved. ................... 14

IV.     CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
   Case No. 15-CV-6314-YGR, 2017 WL 1806583 (N.D. Cal. May 5, 2017) ...........................9

*Adams v. Rose*,
   No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ......................................................4

*Allen v. JPMorgan Chase Bank, N.A.*,
   13-cv-8285 (N.D. Ill. Nov. 3, 2015) .......................................................................................4

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   No. 04 CIV. 8141 DAB, 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ....................................16

*Amchem Prods., Inc.* v. *Windsor*,
   521 U.S. 591 (1997)................................................................................................................8

*Barrett v. ADT Corp.*,
   Case No. 2:15-cv-1348, 2016 WL 865672 (S.D. Ohio Mar. 7, 2016).....................................9

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) ..................................................................................4, 10

*Bee, Denning, Inc. v. Capital Alliance Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) ..........................................................................................12

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)................................................................................................................2

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................................................3, 4

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016)..............................................................................................................8

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)....................................................................................11

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .............................................................................................16

*In re Crazy Eddie Sec. Litig.*,
   824 F. Supp. 320 (E.D.N.Y. 1993) ....................................................................................4, 10

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000)................................................................15

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ............................................................15

*De Los Santos v Millward Brown Inc.*,
    13-cv-80670 (S.D. Fla. Sept. 11, 2015) ...................................................4

*Desai et al. v. ADT Sec. Servs., Inc.*,
    Case No. 1:11–cv–1925 (N.D. Ill. June 21, 2013)....................................4

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993)...............................................................15

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ............................................................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    File Nos. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)..........................8

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).....................7

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)........................................................4, 11

*Gager v. Dell Fin. Servs., LLC*,
    727 F.3d 265 (3d Cir. 2013)....................................................................11

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................12

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000).............................................................1, 2, 5, 6

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
    Case No. 1:13–cv–21016) (S.D. Fla. June 24, 2015) ..............................4

*Hadel v. Gaucho, LLC*,
    193 F. Supp. 3d 243 (S.D.N.Y. 2016)......................................................13

*Hageman v. AT & T Mobility LLC*,
    No. CV 13-50, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) .............4, 10, 15, 16

*Heidarpour v. Central Payment Co.*,
    No. 16-cv-01215 (M.D. Ga. May 4, 2017) .........................................6, 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................6

*Ikuseghan v. Multicare Health Sys.*,
   No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ..........................15, 16

*Jay Clogg Realty Group, Inc. v. Burger King Corp.*,
   No. 13-cv-00662 (D. Md. April 15, 2015)...........................................................................6, 13

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*,
   No. 11-02467 (D. Md. Feb. 12, 2015) .................................................................................6, 13

*Leyse v. Lifetime Entm't Servs.*,
   171 F. Supp. 3d 153 (S.D.N.Y. Mar. 17, 2016) .......................................................................8

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 CIV.1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ......................................4, 13

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir.1997)......................................................................................................12

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................................4, 9, 10

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................3, 10, 14

*Melito v. Am. Eagle Outfitters, Inc.*,
   No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sept. 8,
   2017) ................................................................................................................................11, 15

*Mey v. Frontier Commc'ns Corp.*,
   No. 3:13-cv-1191-MPS (D. Ct. June 9, 2017) ......................................................................6, 13

*Mey v. Interstate National Dealer Services, Inc.*,
   No. 14-01846 (N.D. Ga June 8, 2016) .................................................................................6, 13

*Mey v. Pinnacle Sec., LLC*,
   No. 5:11CV47, 2012 WL 4009718 (N.D. W.Va. Sept. 12, 2012)...........................................7

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 CIV.4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...........................................3

*In re: Monitronics Int'l, Inc.*,
   MDL No. 1:13-MD-2493, 2016 WL 7413495 (N.D. W.Va. Dec. 22, 2016) ..........................7

*Puglisi v. TD Bank, N.A.*,
   No. 13 CIV. 637 GRB, 2015 WL 4608655 (E.D.N.Y. July 30, 2015)....................................13

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
No. 11 Civ. 520 (JLC), 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)......................................13

*Romero v. Dep't Stores Nat'l Bank*,
199 F. Supp. 3d 1256 (S.D. Cal. 2016)..................................................................................8

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ...............................................................................................11

*Savoie v. Merchants Bank*,
166 F.3d 456 (2d Cir. 1999)..................................................................................................3

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 CIV 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ...........................12, 13

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..........................................................................................................8

*Sullivan* v. *DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011)..................................................................................................9

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)..................................................................................3, 11

*Taft v. Ackermans*,
No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)....................................7

*Thomas Krakauer v. Dish Network, L.L.C.*,
Civil Action No. 1:14-CV-333 (M.D.N.C. Jan. 24, 2017) ....................................................10

*Thomas v. Taco Bell Corp.*,
879 F. Supp. 2d 1079 (C.D. Cal. 2012) .................................................................................7

*Vandervort v. Balboa Capital Corp.*,
8 F. Supp. 3d 1200 (C.D. Cal. 2014) .....................................................................................4

*Varcallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D. N.J. 2005)..............................................................................................15

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2001) ...............................................................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...........................................................................................2, 3, 12

*Weng v. T&W Rest., Inc.*,
2016 U.S. Dist. LEXIS 83217 (S.D.N.Y. June 22, 2016).......................................................14

*Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*,
    No. 76 CIV. 2125 (RWS), 2005 WL 736146 (S.D.N.Y. Mar. 31, 2005) .................................6

*Zeltser v. Merrill Lynch & Co.*,
    No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ..........................................13

**Statutes**

47 U.S.C. § 227 *et seq.*............................................................................................................. *passim*

## I.      INTRODUCTION

This Settlement is the result of the sustained efforts of experienced and knowledgeable

Class Counsel, whose participation in this litigation came with considerable financial risk and,

since the case was taken on a purely contingent basis, the possibility of no payment. As

compensation for their work, Class Counsel seek one-third of the common fund of $3,350,000,

equaling $1,116,666, and an award of litigation expenses of $34,498, and an Incentive Award of

$10,000 in recognition of the plaintiff's service to the class. For the reasons detailed below, the

requested fee is reasonable and all of the *Goldberger* factors are satisfied, and the motion should

be granted.

## II.      FACTS

The Settlement Agreement[1] in this Telephone Consumer Protection Act ("TCPA") class

action represents the culmination of a matter that has been pending for more than eighteen

months and was reached only after sufficient discovery, an expert analysis as to scope of

violations, and a full day of mediation involving a third party neutral mediator. Defendant New

York Life Insurance Company ("NYLIC") has agreed to pay $3.35 million into a non-

reversionary settlement fund for the benefit of the class. After two rounds of notice to class

members, 1,812 Settlement Class Members have filed valid claims. *See* Second Supplemental

Declaration of Steven Powell as to Notice Procedures ("Second Supp. Powell Decl." filed

contemporaneously at ECF 58). If the requested relief as to fees, expenses and the incentive

award is granted, Settlement Class Members will receive $1,161.67. *Id.* at ¶8. No part of the

Settlement Fund will revert to NYLIC. Further, as a condition of settlement, NYLIC has agreed

to implement remedial measures to ensure compliance with the TCPA going forward. The

---

[1] All defined terms herein are set forth in the Settlement Agreement. ECF 26-1.

proposed settlement was arrived at only after disputed litigation, a thorough evaluation of claims against the risks of continued litigation, and after the Parties engaged in a day long mediation before a retired federal magistrate judge, Hon. Morton Denlow (Ret.) of JAMS in Chicago, IL. Finally, the scope of the release provided to NYLIC pursuant to the terms of the Settlement Agreement is limited to telemarketing calls ordered by a single NYLIC agent by a third-party telemarketer called LiveTransfers.com, records of which were produced in discovery. *See* Settlement Agreement ¶ 1.16, ECF 26-1.

### III.   ARGUMENT

**A.   Class Counsel's attorneys' fees and costs should be approved.**

Plaintiff requests that the Court approve its request for attorneys' fees of one-third of the Settlement Fund ($1,166,666.00) and reimbursement of litigation costs in the amount of $34,498. For the following reasons, the request for fees and costs should be approved.

1.   The percentage of the fund method should be applied here

A lawyer who recovers a common fund for the benefit of persons other than himself or his client "is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar and percentage of the fund methods, the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Courts prefer the percentage method to the lodestar method for several reasons. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal

quotation marks omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2001) (finding that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Second, the percentage method is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate its attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("[T]he percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with its clients.").

Third, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation. This method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and additional citation omitted). In that regard, the percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.").

Fourth, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie*, 166 F.3d at 461 n.4. Indeed, district courts in the Second Circuit have consistently awarded one-third of the fund in common fund class settlements. *See In re Marsh ERISA Litig.*,

265 F.R.D. 128, 149 (S.D.N.Y. 2010) (awarding one-third of the recovery); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 CIV.4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 188–89 (W.D.N.Y. 2005) (awarding 38.26%); *Strougo*, 258 F. Supp. 2d at 262 (awarding 33.33%); *Maley v. Del Global Tech. Corp*., 186 F. Supp. 2d 358, 370–71 (S.D.N.Y. 2002) (awarding 33.33%; noting "modest multiplier of 4.65 [was] fair and reasonable"); *Becher v. Long Island Lighting Co*., 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding 33.33%); *In re Crazy Eddie Sec. Litig*., 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding 33.8%); *In re Lloyd's Am. Trust Fund Litig*., No. 96 CIV.1262 RWS, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003) ("In this district alone, there are scores of . . . cases where fees . . . were awarded in the range of 33.3 percent of the settlement fund.").

And district courts across the country have awarded 33% of the common fund in TCPA cases. *See, e.g., Hageman*, 2015 WL 9855925, at *4 (awarding $15 million in fees, or one-third of the $45 million common fund); *Allen v. JPMorgan Chase Bank, N.A.*, 13-cv-8285, ECF No. 98 (N.D. Ill. Nov. 3, 2015) (awarding one-third fee award on $10,200,000 settlement); *De Los Santos v Millward Brown Inc.*, 13-cv-80670-DPG, ECF No. 84 (S.D. Fla. Sept. 11, 2015) (awarding one-third of $11 million settlement for attorneys' fees); *Desai et al. v. ADT Sec. Servs., Inc*., Case No. 1:11–cv–1925, ECF No. 243 (N.D. Ill. June 21, 2013) (awarding fees of one-third of $15 million fund); *Guarisma v. ADCAHB Med. Coverages, Inc*., Case No. 1:13–cv–21016), ECF No. 95 (S.D. Fla. June 24, 2015) (awarding fees and costs of one-third of the

$4,500,000.00 settlement fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% of $3.3 million ceiling award).

Based on the foregoing, the Plaintiff respectfully requests that the Court use the percentage of fund method here.

> 2.  The *Goldberger* factors support an award of one-third of the common fund.

In determining the reasonableness of fee applications, courts consider six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### *a)   Class Counsel's time and labor.*

Class Counsel have dedicated 545.5 hours to this case over the past two years. Anthony Paronich worked on this case for a total of 269.30 hours of attorney time. *Declaration of Anthony Paronich*, ECF 59. Calculated at a rate of $450.00 an hour, the total billable value of Attorney Paronich's time comes to $121,185.00. Matthew McCue worked on this case for a total of 162.75 hours of attorney time. *Declaration of Matthew McCue*, ECF 60. Calculated at a rate of $700.00 an hour, the total billable value of Mr. McCue's time comes to $113,925.00. Edward Broderick worked on this case for a total of 56.9 hours of attorney time. *Declaration of Edward Broderick*, ECF 61. Calculated at a rate of $700.00 an hour, the total billable value of Broderick's time comes to $39,830.00. Finally, through final approval, the Richman Law Group will have worked on this case for a total of 56.55 hours. Most of this time was incurred by Kim Richman whose rate is $700.00 an hour. The rest (21.75 hours) was attributed to associates of

Mr. Richman who bill out at $250.00 an hour. *Declaration of Kim Richman*, ECF 62.[2]  The total

billable value of the Richman Law Group is $29,770.50. When added together, the billable value

of all plaintiff's attorneys time spent on this file comes to $304,710.50.[3]

### b)   The Litigation's Magnitude and Complexity

The second *Goldberger* factor, which addresses "the magnitude and complexities of the

litigation," also supports approval of the requested fee. *Goldberger*, 209 F.3d at 50. As noted

above, consumer class actions like this one are complex and multifaceted. Further, Class Counsel

spent considerable time and effort to determine and understand NYLIC's telemarketing protocols

and how the automated telemarketing calls were transmitted to class members. Plaintiff also

worked with an expert witness to assess the scope of the purported illegal conduct at issue. If the

litigation had not settled, Class Counsel would have faced additional obstacles as NYLIC

continued to mount a vigorous defense, including a trial that would require substantial fact and

---

[2] Here, the rates charged by Class Counsel fall within the range of prevailing rates in this District. *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving billing rates ranging from $425 to $825 per hour for attorneys); *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, No. 76 CIV. 2125 (RWS), 2005 WL 736146, at *12 (S.D.N.Y. Mar. 31, 2005), *opinion amended on reconsideration*, No. 76 CIV.2125 RWS, 2005 WL 2175998 (S.D.N.Y. Sept. 9, 2005) (observing that "a recent billing survey made by the National Law Journal shows that senior partners in New York City charge as much as $750 per hour and junior partners charge as much as $490 per hour").

[3] Moreover, Class Counsel's billing rates have been approved by other district courts throughout the country in similar TCPA class actions. *See e.g., Mey v. Frontier Communications Corporation,* No. 3:13-cv-1191-MPS (D. Ct. June 9, 2017) (approving a $11,000,000 settlement and attorney fee of one-third that amount based on hourly rate of $700 for Messrs. McCue and Broderick and $450 for Mr. Paronich); *Heidarpour v. Central Payment Co.*, No. 16-cv-01215 (M.D. Ga. May 4, 2017) (same); *Mey v. Interstate National Dealer Services, Inc.*, No. 14-01846 (N.D. Ga June 8, 2016) (same); *Jay Clogg Realty Group, Inc. v. Burger King Corporation*, No. 13-cv-00662 (D. Md. April 15, 2015) (approving hourly rate of $700 for Messrs. McCue and Broderick and $425 for Mr. Paronich who was an associate at the time); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 11-02467 (D. Md. Feb. 12, 2015) (same).

expert testimony, and possible appeals relating to NYLIC's liability. *See Fleisher v. Phoenix Life Ins. Co*., No. 11-CV-8405 (CM), 2015 WL 10847814, at *20 (S.D.N.Y. Sept. 9, 2015) (awarding fees of one-third of cash component of settlement due, in part, to the complexity of issues that required expert analysis). This factor favors approval of Class Counsel's petition.

c)      ***The Risks of Litigation***

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). Class Counsel in this case undertook representation of this matter on a pure contingency-fee basis. As a result, they shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment, all while devoting time to this case that otherwise could have been spent on other matters. The primary risk that Plaintiffs faced was that they could lose on the merits.  NYLIC steadfastly denied liability for the telemarketing calls at issue claiming that it could not be held vicariously liable under agency theories because it did not exert sufficient control over the telemarketing calls at tissue. Several courts around the country have granted defendants' motions for summary judgment on such a theory. *See In re: Monitronics Int'l, Inc.*, MDL No. 1:13-MD-2493, 2016 WL 7413495 (N.D. W.Va. Dec. 22, 2016) (granting motion for summary judgment on vicarious liability theory); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) (same); *see also Mey v. Pinnacle Sec., LLC*, No. 5:11CV47, 2012 WL 4009718, at *5 (N.D. W.Va. Sept. 12, 2012) (granting summary judgment on TCPA claim because plaintiff failed to show defendant had "ability to control the manner and means of the calls made on its behalf"). Although Plaintiff and Class Counsel were confident as to the merits of the claims, the risk that

7

the Plaintiff would ultimately not prevail on its class claims was real. In addition, beyond these risks, the possibility of summary dismissal of this class action was also possible given the Supreme Court's decisions in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), both of which were issued during the pendency of this action. Even after the Supreme Court's decisions in those cases, the legal landscape remains uncertain. For example, some post-*Gomez* courts have held that even a plaintiff who rejects a settlement offer can have a case dismissed by virtue of an adverse judgment entered by the court. *See, e.g., Leyse v. Lifetime Entm't Servs.,* 171 F. Supp. 3d 153, 155-156 (S.D.N.Y. 2016), *aff'd*, 679 Fed. Appx. 44 (2d Cir. 2017)*; but see, Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, No. 13-CV-4577 (KMK), 2017 WL 1906890, at *8-10 (S.D.N.Y. May 8, 2017) (refusing to permit deposit of funds to moot potential class claims). Similarly, following *Spokeo*, some courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See, e.g.*, *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1264 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.") A decision from this Court on either of those issues against the Plaintiffs would have ended this litigation.

Plaintiff and Class Counsel further faced the risks inherent in seeking certification of the proposed class. Although this Court certified a class for settlement purposes, "[i]n the settlement context, class certification criteria are easily met because the class is unified by a common interest in a reasonable recovery." *In re EVCI Career Colls. Holding Corp. Sec. Litig.,* File Nos. 05 Civ. 10240(CM), 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007); *see also Amchem*

*Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); *Sullivan* v. *DB Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011) (*en banc*) (same). Thus, the mere fact that the Court certified settlement classes does not mean that class certification was a certainty following adversarial briefing. Indeed, class certification is not automatic in TCPA cases involving issues of vicarious liability. *Compare Barrett v. ADT Corp.*, Case No. 2:15-cv-1348, 2016 WL 865672, at *8 (S.D. Ohio Mar. 7, 2016) (holding common vicarious liability issues did not predominate because it was impossible to determine who consented to calls) *with Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, Case No. 15-CV-6314-YGR, 2017 WL 1806583, at *7–8 (N.D. Cal. May 5, 2017) (holding common vicarious liability issues predominated where the record showed consent defense could be determined on a classwide basis through common evidence).

Finally, as in any case, there is a substantial risk of losing at trial even if the class is certified. Even if Plaintiff won on the merits, one or more appeals would be likely. Thus, any recovery would be jeopardized and delayed for years. In contrast, this Settlement provides guaranteed and substantial relief without further delay.

For these reasons, the risk factor also supports Class Counsel's attorneys' fee request.

### d) *Quality Of The Representation*

"The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the Class through the efforts of such counsel." *Maley*, 186 F. Supp. 2d at 373. Class Counsel are experienced class action litigators who have successfully prosecuted complex consumer cases, and who have become particularly skilled and experienced in litigating TCPA class actions. In fact, Plaintiff's counsel were part of a trial team

that conducted the only trial of a certified class action in a TCPA case in federal court, which resulted in a $20,446,400 verdict for approximately 18,000 class members after a five-day trial. *See Thomas Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333, ECF No. 292 (M.D.N.C. Jan. 24, 2017). This award was later trebled by the Court to $61,339,200. *Id.* at ECF No. 338 (May 22, 2017).

In this case, Class Counsel efficiently applied their skills and experience to obtain excellent relief for the Class. As a result, 1,812 Settlement Class Members each stand to receive $1,161.67. In addition, as a result of this litigation, NYLIC has agreed to implement substantial remedial measures to ensure TCPA compliance going forward. Finally, under no circumstances will any of the $3.35 million Settlement Fund revert to NYLIC. Any funds that remain after efforts to disburse the Settlement Fund have been exhausted will be donated to an appropriate charity at the Court's direction. The quality of the representation of Class Counsel supports Class Counsel's attorneys' fee request.

### e) *The Fee is Reasonable in Relation to the Settlement.*

Class Counsel's request for one-third of the fund is "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere." *In re Marsh ERISA Litig.*, 265 F.R.D. at 149 (awarding $11,665,500 fee out of $35 million settlement fund); *Maley*, 186 F. Supp. 2d at 370–71 (awarding $3,832,950 fee out of $11.5 million settlement fund); *Becher*, 64 F. Supp. 2d at 182 (awarding $2,583,333 fee out of $7,750,000 settlement fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. at 326 (awarding $14.2 million fee out of $42 million settlement fund); *Hageman*, 2015 WL 9855925, at *4 (awarding $15 million fee out of $45 million common fund in a TCPA case).

In a recent TCPA final approval decision in this district, *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sep. 8, 2017), Judge Caproni awarded $4,350,000 of a $14,500,000 settlement fund. While that amount represents 30% instead of the requested 33% here, that award was given in response to a number of class member objections, where here there are none. Furthermore, the claims rate in *Melito* was 6% compared to 7% here, and the recovery for claimants in *Melito* was $232 and here it is $1,161.67.  As a result, this factor also weighs in favor of granting the requested fees.

### f)   *Public Policy Considerations*

The Second Circuit and courts in this district take into account "the social and economic value of class actions" and "the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. When individuals' damages are small, "it [is] less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations, which would certainly exceed its recoveries manifold." *Frank,* 228 F.R.D. at 181. Thus, "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

In addition, the TCPA "is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) (citing S. Rep. 102–178, at 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972). Its purpose is to curb unwanted texts and calls that are a nuisance and an invasion of consumers' privacy. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). In the TCPA context, class actions like this one provide "the optimal means of forcing corporations to

internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310
F.R.D. 614, 630 (S.D. Cal. 2015).

The Settlement forces NYLIC to pay for the unlawful telemarketing conducted on its
behalf. By obtaining significant monetary compensation for Settlement Class Members on an
issue that is important to consumers, Class Counsel fulfilled the remedial purpose of the TCPA.
Thus, this factor weighs in favor of Class Counsel's request for fees.

> 3.     A lodestar cross check further supports the requested fee.

In assessing the reasonableness of a fee award, courts may compare the lodestar to the
fees award under the percentage method as a "crosscheck." *Wal-Mart*, 396 F.3d at 123. When
the lodestar method is used as a "cross-check," the district court need not exhaustively scrutinize
counsel's hours. *Id.* In performing a lodestar cross-check, courts multiply hours reasonably
expended against hourly rates prevailing in the community. *Sewell v. Bovis Lend Lease, Inc.*, No.
09 CIV. 6548 RLE, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (citation omitted); *see
also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir.1997) ("[t]he lodestar figure should be
in line with those [rates] prevailing in the community for similar services by lawyers of
reasonably comparable skill, experience, and reputation") (internal quotations omitted). Courts
then typically apply a "multiplier" to the lodestar. *In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the
complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and
other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47).

As detailed above, Class Counsel have dedicated 545.5 hours to this case over the past
two years. When added together, the billable value of all plaintiff's attorneys time spent on this
file comes to $304,710.50. The amount of attorneys' fees sought by Class Counsel is $1,116,666.
A lodestar crosscheck confirms that Class Counsel's fee request is reasonable. The fees sought

($1,116,666) divided by the value of the time spent on this litigation ($304,710.50) yields a

multiplier of 3.66. Such a multiplier is well within the range awarded by courts in this Circuit.

*See, e.g. Sewell v. Bovis Lend Lease, Inc*., No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *13

(S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six.");

*Ramirez v. Lovin' Oven Catering Suffolk, Inc*., No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4

(S.D.N.Y. Feb. 24, 2012) (granting 6.8 multiplier); *Hadel v. Gaucho, LLC*, 193 F. Supp. 3d 243

(S.D.N.Y. 2016) (granting multiplier of 5); *Zeltser v. Merrill Lynch & Co*., No. 13 Civ. 1531,

2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range

granted by courts"); *Puglisi v. TD Bank, N.A*., No. 13 CIV. 637 GRB, 2015 WL 4608655, at *1

(E.D.N.Y. July 30, 2015) (awarding a multiplier of 4.86); *In re Lloyd's Am. Trust Fund Litig*.,

2002 WL 31663577, at *27 (A "multiplier of 2.09 is at the lower end of the range of multipliers

awarded by courts within the Second Circuit.").

Counsel for all parties have litigated this case efficiently and effectively. As a result, an

excellent result has been achieved for the members of the class. Attorneys should be encouraged

to work together, to identify exposure at the outset of the case, and to work collaboratively

towards a fair resolution. That is exactly what happened in this case. Class counsel should not be

penalized for efficient work. As recognized by this Court:

> A 'percentage of fund' contingency fee agreement can encourage early settlement
> of a case which may, in turn, result in a higher award for counsel than they would
> achieve under a lodestar analysis. This is not inherently unfair, however, so long
> as the fee otherwise falls within an acceptable range.

*Weng v. T&W Rest., Inc.,* 2016 U.S. Dist. LEXIS 83217 * 9-10 (S.D.N.Y. June 22, 2016)

(Moses, J.). In short, a lodestar crosscheck confirms that Class Counsel's request is reasonable

and reflects a fair multiplier on their lodestar.

13

**B.      Class Counsel are entitled to reimbursement of its litigation expenses.**

"It is well-established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150 (citation omitted). Class Counsel seek reimbursement of out-of-pocket litigation expenses, totaling approximately $34,498. A significant portion of these expenses ($12,133) were incurred to retain an expert data analysis expert to analyze the calling data, to identify class members, and to determine the number of TCPA violations at issue. The remaining amount is attributable to general litigation expenses such as travel, transcript costs, and mediation expenses. *See* Paronich Decl. ¶ 30; McCue Decl. ¶ 35. Counsel expended these out-of-pocket costs without any assurance that they would ever be repaid. These out-of-pocket costs were necessary and reasonable to secure the resolution of this litigation and should be recouped. *In re March ERISA Litig.,* 265 F.R.D at 150 ("The expenses that may be reimbursed from the common fund encompass 'all reasonable' litigation-related expenses."). Furthermore, Class Counsel is not requesting reimbursement of any expenses related to the continued hearing on Final Approval.

**C.      The requested incentive award for the Plaintiff should be approved.**

Finally, the Settlement Agreement provides for the payment to the lead plaintiff of $10,000 as a service award. Such an award, of course, is subject to the review and approval of the Court. Courts around the country allow such awards to named plaintiffs or class representatives. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993) (awarding $142,500 to class representatives out of $50 million fund); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund). One district court has gone so far as to say that incentive awards are "routinely approve[d]." *Cullen v. Whitman Med. Corp.*,

197 F.R.D. 136, 145 (E.D. Pa. 2000). The purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. *Varcallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D. N.J. 2005). In fact, this award is identical to what each of the four class representatives received in *Melito* from Judge Caproni.

Class members would have received nothing had the Plaintiff not been willing to file and continue to pursue this Action over the years it took to resolve. The requested award is also in line with awards from other courts in TCPA actions. *See e.g., Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an incentive award of $15,000 to be reasonable); *Hageman*, 2015 WL 9855925, at *4 (approving $20,000 incentive award); s*ee also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. 2009) (recognizing that "incentive awards" for named plaintiffs as high as $35,000 and even $45,000 "are within the range of what other courts have found to be reasonable" (citation omitted). These awards provide an incentive to plaintiffs to remain involved in complex litigation that often can take years to complete. *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 CIV. 8141 DAB, 2012 WL 345509, *6 (S.D.N.Y. Feb. 2, 2012) (citation omitted) (internal quotation marks omitted); *see also Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"). Incentive awards in TCPA cases are routinely approved. *See, e.g. Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an incentive award of $15,000 to be reasonable); *Hageman v. AT & T Mobility*

*LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at \*4 (D. Mont. Feb. 11, 2015) (approving $20,000 incentive award).

Accordingly, the Court should grant the requested service award based on the significant work that Plaintiff undertook on behalf of the Class.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court approve its motion for payment of attorneys' fees in the amount of $1,116,666; a service award in the amount of $10,000, and award counsel their reasonable expenses in the amount of 34,498.00.[4]

---

[4] Class Counsel's expenses actually exceed this amount. However, Class Counsel will not seek reimbursement for expenses spent litigating this case after the original final approval filing.

Dated: February 6, 2018

Respectfully submitted,

By:    /s/ *Matthew P. McCue*
        Matthew P. McCue
        Email: mmccue@massattorneys.net
        THE LAW OFFICE OF MATTHEW P. MCCUE
        1 South Avenue, Suite 3
        Natick, Massachusetts 01760
        Telephone: (508) 655-1415
        Facsimile: (508) 319-3077

        Anthony Paronich
        Email: anthony@broderick-law.com
        Edward A. Broderick
        Email: ted@broderick-law.com
        99 High Street, Suite 304
        Boston, Massachusetts 02110
        Telephone: (508) 221-1510

        Kim E. Richman
        Email: krichman@richmanlawgroup.com
        RICHMAN LAW GROUP
        81 Prospect Street
        Brooklyn, New York 11201
        Telephone: (212) 687-8291
        Facsimile: (212) 687-8292

        *Attorneys for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I, hereby certify that on February 6, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

counsel of record.

        /s/ *Matthew P. McCue*
        Matthew P. McCue