**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>     v.<br><br>NEW YORK LIFE INSURANCE COMPANY<br>                  Defendant. | No. 1:16-cv-03588-BCM |

**PLAINTIFF'S RENEWED MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    THE NOTICE PROGRAM SATISFIED DUE PROCESS ............................................. 2

III.   THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR .............. 4

     A.    The settlement is substantively fair and should be approved. ............................... 5

          1.    Litigation through trial would be complex, costly, and long ...................... 7

          2.    The reaction of the Class included a single exclusion and no objections from any class member............................................................ 8

          3.    Discovery has advanced far enough to allow the parties to responsibly resolve the case ....................................................................... 10

          4.    Plaintiff would face real risks if the case proceeded................................ 10

          5.    Establishing a class and maintaining it through trial would not be simple ....................................................................................................... 12

          6.    Defendants' ability to withstand a greater judgment is a neutral factor ... 12

          7.    The settlement fund is substantial in light of the possible recovery and the attendant risks of litigation................................................................ 13

IV.   CONCLUSION................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
  No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ...................................................14

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) .....................................................................................13

*Agne v. Papa John's Int'l Inc.*,
  No. 2:10-cv-01139 (W.D. Wash. Oct. 8, 2013)....................................................................15

*Bais Yaakov of Spring Valley v. Educ. Testing Serv.*,
  No. 13-CV-4577 (KMK), 2017 U.S. Dist. LEXIS 70318 (S.D.N.Y. May 8,
  2017) .....................................................................................................................................12

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979).....................................................................................................8

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016)..............................................................................................................11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
  Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)....................................................................................................10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)........................................................................................4, 7, 9, 10

*Cubbage v. Talbots, Inc.*,
  No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012)...............................................................14

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).......................................................................................................9

*Desai v. ADT Sec. Servs., Inc.*,
  No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) ........................................................................15

*In re Enhanced Recovery Co.*,
  No. 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014)..........................................................15

*Estrada v. iYogi, Inc.*,
  No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015)............................14

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................5

*Flores v. Anjost,*
    No. 11 CIV. 1531 AT, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ......................................11

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................................................13

*Franklin v. Wells Fargo Bank, N.A.,*
    No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ...........................14

*Garret v. Sharps Compliance, Inc.,*
    No. 1:10-cv-04030 (N.D. Ill. Feb. 23, 2012) .........................................................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
    279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................4

*Gilliam v. Addicts Rehab Crt. Fund,*
    No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................................14

*Grant v. Capital Mgmt. Servs.,*
    No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 (S.D. Cal. Mar. 5, 2014) .............................15

*Hicks v. Morgan Stanley & Co.,*
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................8

*In re Initial Pub. Offering Sec. Litig.,*
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................................13

*Jackson v. Caribbean Cruise Line, Inc.,*
    88 F. Supp. 3d 129 (E.D.N.Y. 2015) .....................................................................................11

*Karic v. Major Auto. Companies, Inc.,*
    No. 09 CV 5708 (CLP), 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016)..................................14

*Leyse v. Lifetime Entm't Servs.,*
    171 F. Supp. 3d 153 (S.D.N.Y. Mar. 17, 2016) .....................................................................11

*Manouchehri v. Styles for Less, Inc.,*
    No. 14-cv-2521 NLS, 2016 WL3387473 (S.D. Cal. June 20, 2016).......................................14

*Marisol A. v. Giuliani,*
    185 F.R.D. 152 (S.D.N.Y. 1999) .............................................................................................9

*Melito v. Am. Eagle Outfitters, Inc.,*
    No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sept. 8,
    2017) ......................................................................................................................................15

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972).....................................................................................................14

*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*,
 No. 1:13-cv-06897 (N.D. Ill. Jan. 15, 2015).........................................................15

*Owens v. Freshdirect LLC*,
 No. 14 Civ. 1909 (VEC) (S.D.N.Y. Oct. 30, 2015)...................................................9

*In re Paine Webber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) ..............................................................................13

*In re Processed Egg Prods. Antitrust Litig.*,
 284 F.R.D. 278 (E.D. Penn. 2012).............................................................................4

*Romero v. Dep't Stores Nat'l Bank*,
 199 F. Supp. 3d 1256 (S.D. Cal. 2016)....................................................................12

*Spillman v. RPM Pizza, LLC*,
 No. 10-cv-0349 (M.D. La. May 23, 2013)................................................................15

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)........................................................................................11, 12

*Steinfeld v. Discover Fin. Servs.*,
 No. C 12-01118 (N.D. Cal. Mar. 10, 2014) .............................................................14

*Stinson v. City of New York*,
 No. 10 CIV. 4228 (RWS), 2017 WL 2544831 (S.D.N.Y. June 12, 2017) ...............10

*Strougo v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................................8

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................11

*Thompson v. Metro. Life Ins. Co.*,
 216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................................9

*Tiro v. Pub. House Investments, LLC*,
 No. 11 CIV. 7679 CM, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013).....................7

*Velez v. Novartis Pharmaceuticals Corp.*,
 No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) .................5

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
 271 F.R.D. 668 (D. Wyo. 2011) ...............................................................................12

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*,
 274 F.R.D. 229 (S.D. Ill. 2011) ................................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)....................................................................................2, 4, 11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).........................................................................................10

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) ...............................................................................8

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,
    No. 1:12-cv-00780 (N.D. Ill. Oct. 30, 2013) ...............................................................15

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)...........................................................................9

**Statutes**

47 U.S.C § 227, *et seq*.......................................................................................... *passim*

**Rules**

Fed R. Civ. P. 23...........................................................................................................10

Fed. R. Civ. P. 23(e)(5).................................................................................................10

Fed. R. Civ. P. 23(f).....................................................................................................13

**Other Authorities**

*Manual for Complex Litigation* (Fourth) (2010) ............................................................5

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2016)..................................5

## I.    INTRODUCTION

The representative plaintiff in this Telephone Consumer Protection Act, 47 U.S.C § 227, ("TCPA") class action, Abante Rooter and Plumbing Inc. ("Abante") moves the Court for final approval of the proposed class action settlement. Defendant, New York Life Insurance Company ("NYLIC") does not oppose this motion and no Settlement Class Member has objected to the proposed settlement.[1]

The Settlement Agreement[2] in this class action is the culmination of over one and a half years of litigation, and was reached only after sufficient discovery, an expert assessment of the scope of conduct, and a full day of mediation before a retired federal magistrate judge, Hon. Morton Denlow (Ret.) of JAMS in Chicago, IL. The telemarketing calls at issue were made to 25,830 unique phone numbers. *See* ECF 40, *Declaration of Steven Powell as to Notice Procedures* at ¶5. The Settlement Agreement provides for a $3.35 million non-reversionary settlement fund for the benefit of the Settlement Class. After two rounds of notice and corresponding claims periods, 1,812 (approximately 7%) eligible claims have been filed by Settlement Class Members. If the requested relief as to fees, expenses, administrative expenses, and the incentive award are granted, Settlement Class Members will each receive $1,161.67. *See* ECF 58 *Second Supplemental Declaration of Steven Powell as to Notice Procedures* ("Second Supp. Powell Decl.") at ¶8.

None of the Settlement Fund will revert to NYLIC. Further, as a condition of settlement, NYLIC has agreed to implement remedial measures to ensure compliance with the TCPA going forward. Finally, the scope of the release provided to NYLIC is limited to the telemarketing calls

---

[1] The sole objection was filed by a consumer who is not a Settlement Class Member. *See* ECF No. 39 at FN2.

[2] All defined terms herein are set forth in the Settlement Agreement. ECF 26-1.

made by a third party telemarketer called LiveTransfers.com hired by a single NYLIC agent, records of which were produced in discovery and comprise the Class List. *See* Settlement Agreement ¶ 1.16, ECF 26-1.

For the reasons set forth in this memorandum, Plaintiff respectfully requests that the Court grant final approval of the settlement by: (1) finally certifying the Settlement Class; (2) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Settlement Class; (3) determining that adequate notice was provided to the Settlement Class; (4) approving Class Counsel's requested attorneys' fees of $1,116,666 and reimbursement of $34,498 in out-of-pocket litigation costs, including expert and mediation expenses; (5) and approving an award of $10,000 to the Plaintiff for its service as the Class Representative.

## II.      THE NOTICE PROGRAM SATISFIED DUE PROCESS

The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005). On May 18, 2017, this Court (ECF No. 31) granted in part Plaintiff's Motion for Preliminary Approval of Class Action Settlement and approved Kurtzman Carson Consultants LLC ("KCC") as the settlement administrator. On May 30, 2017, this Court approved the Notice Plan and scheduled a Final Approval Hearing on September 20, 2017. ECF No. 33.  Thereafter, KCC proceeded to send out notice to the class. In response, 653 class members filed claims. No class members filed objections. No class members opted-out of the settlement. *See* ECF No. 40*, Declaration of Steven Powell as to Notice Procedures*. The Notice Plan approved by the Court, however, required KCC to mail to class members a Long Form letter notice. *See* ECF No. 33 and ECF No. 25-1 at §1.12-1.13 and §4.2. Due to an administrative oversight, KCC only sent consumers the post card claim form that, in turn, directed class members to the settlement web site where consumers could access the Long Form Notice. *See*

2

ECF No. 46, *Supplemental Declaration of Steven Powell* at ¶5-10. Thereafter, on October 2, 2017, Plaintiff filed a *Motion to Remedy Error In Class Administration* pursuant to which the Plaintiff and KCC proposed that the claims process be reopened for three months and new notice be sent to all class members, with KCC bearing the cost of the resent notice. *See* ECF No. 45. On October 20, 2017, the Motion to Remedy Error in Class Administration was granted. *See* ECF No. 52. Pursuant to the Court's Order, the claims process was reopened through January 2, 2018. *Id.* On November 3, 2017, KCC caused a supplemental notice including a postcard and the Long Form Notice to be mailed to all class members on the Class List. *See* Second Supp. Powell Decl. The supplemental notice informed Class Members who previously filed a claim that they did not need to file a second claim. *Id.* As a result of this second notice and claims period, 1,159 eligible new claims were filed. When added to the 653 claims filed during the initial claims period, the total number eligible claims filed in this case amounts to 1,812. Only one class member requested to opt out of the proposed settlement during the renewed claims process. No objections were received. *Id.*[3]

---

[3] In preparing this final approval submission, the Plaintiff discovered a drafting error in the Long Form notice that was originally submitted to the Court as part of the Settlement Agreement. *See* ECF. 26-1, Ex. 3. Specifically, the Long Form notice has a single instance where it lists the settlement amount as $3,550,000, as opposed to the correct amount of $3,350,000. *Id.* The other two references to the settlement amount in the Long Form notice have the correct amount of $3,350,00, as did the post card notice sent to all class members. *Compare* Second Supp. Powell Decl. (ECF 56) Exhibit A (Post Card Claim Form) to Exhibit B (Long Form Notice). Plaintiff believes the error did not harm or prejudice any member of the class. It should be noted that class members were all informed that the expected per consumer payout would be approximately $800.00 depending on the number of claims filed. *Id.* The actual payment per class member will be $1,161.67, an amount more than initially estimated. As a result, Plaintiff does not believe that the error affects the fundamental fairness of the notice plan and the overall fairness of the proposed settlement which provides an excellent benefit to each Settlement Class Member. In the interest of full disclosure and out of an abundance of caution, however, Plaintiff brings this error to the attention of the Court.

## III.    THE SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR

A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). Approval of a class action settlement is within the Court's discretion, which "should be exercised in light of the general judicial policy favoring settlement." *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 159 (S.D.N.Y. 2011) (citation omitted). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

"Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Id*; s*ee also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement"). Because the settlement is both procedurally and substantively fair, it should be approved.

A proposed class settlement is presumptively fair when sufficient discovery has been provided and "the settlement is the product of arms-length negotiation, untainted by collusion." William B. Rubenstein, *Newberg on Class Actions* § 13:45 (5th ed. 2016). The settlement here is

procedurally fair because it was reached after Class Counsel conducted a thorough investigation of the claims and defenses through discovery, evaluated the strengths and weaknesses of those claims and defenses, retained experts to assess the scope of the TCPA violations at issue, and engaged in arm's length negotiations with NYLIC before a retired federal magistrate judge. Hon. Morton Denlow (Ret.) of JAMS in Chicago, IL. After arriving at a tentative agreement with NYLIC, Class Counsel engaged in extensive confirmatory discovery to ensure that all relevant facts were disclosed and were accurate. *See* ECF 59 *Declaration of Anthony Paronich* at ¶14-25 (detailing various phases of litigation and discovery). Accordingly, by the time Plaintiff and Class Counsel agreed to a final Settlement Agreement, they fully understood the scope of the class, the strengths and weaknesses of their respective claims and defenses, and the extent of class wide damages. As a result, the settlement agreed to by the Parties was the product of arms-length negotiations, was untainted by collusion, and as a result was procedurally fair.

### A.      The settlement is substantively fair and should be approved.

The proposed settlement should also be finally approved because it is substantively fair. As noted above, NYLIC has agreed to pay $3.35 million into a non-reversionary settlement fund for the benefit of the proposed class. After two rounds of notice to class members and an extended class claim period, 1,812 Settlement Class Members have filed claims. *See* Second Supp. Powell Decl. at ¶4. If the requested relief as to fees, expenses and the incentive award is granted, each Settlement Class Member will receive $1,161.67. *Id.* at ¶8.  In the event that a Settlement Class Member that filed a claim but does not cash their checks, a second round of payments will be made *pro rata* to Settlement Class members who did. *See* Settlement Agreement ECF 26-1 at § 3(c). If a second round of payments is not administratively feasible, any remaining funds will be donated *cy pres* to an appropriate charity at the direction of the Court. *Id.*  In no event will any part of the Settlement Fund revert to NYLIC.

The proposed settlement further benefits Settlement Class Members by requiring NYLIC to implement enhanced compliance measures to prevent future TCPA violations. *See* Settlement Agreement ECF 26-1 at § 2.2. In addition to the cash benefit being offered to Settlement Class Members, NYLIC has implemented a series of enhanced compliance measures designed to ensure that the allegations of the Complaint do not recur. Specifically, NYLIC has developed and sent to its employees a telemarketing-specific compliance document that all employees are required to acknowledge and sign as a condition of their employment. *Id.* Any employee who fails to execute and return the document has had his or her access to NYLIC's system suspended. *Id.* In addition, NYLIC sends all of its field agents quarterly compliance communications that remind them of their obligations under the terms of their respective contracts with NYLIC to comply with telemarketing regulations. *Id.* Finally, NYLIC's agent handbook, which is required to be reviewed and signed before any access is given to the NYLIC system, has been enhanced to further address the specifics of telemarketing law restrictions. *Id.* Finally, the scope of the release provided to NYLIC is limited and extends only to those calls made to consumers as evidenced by the call records produced in discovery by NYLIC and obtained from a telemarketer called LiveTransfers.com. *See* Settlement Agreement ECF No. 26-1 at § 1.16.

The factors to consider in assessing whether a proposed settlement is substantively fair were set forth by the Second Circuit in *Grinnell*, 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors instruct the trial court to assess:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the [d]efendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of

6

reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463. "The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice," rather than applying the factors in a systematic manner. *Id.* at 468. Here, the *Grinnell* factors weigh in favor of final approval.

       1.    <u>Litigation through trial would be complex, costly, and long</u>

"To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation." *Tiro v. Pub. House Investments, LLC*, No. 11 CIV. 7679 CM, 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013) (citing *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). This case is no exception.

Here, continued litigation of this matter would cause additional expense and delay. Although the parties had conducted significant discovery up to this point, substantial work remained to prepare this case for trial. For example, complex briefing regarding motions for class certification, summary judgment, and possibly a decertification motion remained. In the event the class recovered a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could delay the class recovery for years, further reducing its value. *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the

actions through further litigation…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).  In contrast, the settlement makes substantial monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

> 2.   The reaction of the Class included a single exclusion and no objections from any class member.

"The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008). The Class Notice explained the allocation formula, an estimate of each Class Members' award, and informed Class Members of their right to object or to exclude themselves from the settlement. No Settlement Class Members objected to the settlement and only one opted out of the settlement. *See* ECF No. 41*, Declaration of Steven Powell; Second Supplemental Declaration of Steven Powell*. Such a favorable reaction supports final approval. *See Owens v. Freshdirect LLC*, No. 14 Civ. 1909 (VEC), Dkt. No. 179 (S.D.N.Y. Oct. 30, 2015) (Caproni, J.) (granting final approval where 10 class members excluded themselves from settlement); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (affirming district court's conclusion that 18 objections out of 27,833 class members was a "small number"); *Thompson v. Metro. Life Ins. Co*., 216 F.R.D. 55, 62 (S.D.N.Y. 2003) (approving settlement where only 19 out of forty thousand claimants lodged objections); *Marisol*

*A. v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999) (holding that three objections in a class of over 100,000 was evidence of the Settlement Agreements' fairness, reasonableness, and adequacy).

In this case, one *pro se* objection was filed to the proposed settlement by a consumer named Melissa Randolph.  *See* ECF 40, *Declaration of Steven Powell as to Notice Procedures* at ¶18.  However, as attested by the claims administrator, the call records produced by NYLIC in discovery, to which the settlement is limited, do not evidence a phone call to a telephone number owned or held in the name of Ms. Randolph.  *Id.*  Accordingly, Ms. Randolph is not a class member.[4] As a result, Ms. Randolph is not releasing any claims she may have, and has no standing to object. Rule 23 provides that "[a]ny class member may object" to the proposed settlement before this Court. *See* Fed. R. Civ. P. 23(e)(5). Objectors who are non-class members lack standing to object to the settlement. *Stinson v. City of New York*, No. 10 CIV. 4228 (RWS), 2017 WL 2544831, at *6 (S.D.N.Y. June 12, 2017) (citing *In re Drexel Burnham Lambert Grp., Inc.*, 130 B.R. 910, 923 & n.8 (S.D.N.Y. 1991)); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244 (2d Cir. 2007) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action."). Even if Ms. Randolph was a class member, her objection would have no merit. Ms. Randolph's objection relates to her fear that the amount of attorneys' fees in connection with the settlement would result in "taking too much of the consumer's money." However, the settlement amount for each

---

[4] As a non-Settlement Class Member who did not receive direct notice, it is possible that Ms. Randolph heard about this case after a website published a story on the settlement. *See e.g.* https://topclassactions.com/lawsuit-settlements/closed-settlements/794406-new-york-life-telemarketing-calls-class-action-settlement/ (Last Visited February 2, 2018).

valid claimant of $1,161.67 represents an excellent result which claimants would have been hard pressed to exceed in the most successful individual litigation.

For these reasons, the second *Grinnell* factor weighs in favor of final approval.

> 3.   <u>Discovery has advanced far enough to allow the parties to responsibly resolve the case</u>

The third *Grinnell* factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). The discovery completed by the parties here meets this standard. The parties litigated this case, thoroughly and effectively. Plaintiff's counsel thoroughly analyzed the factual and legal issues involved in this case, confirmed the scope of the violations at issue, and took depositions to ensure the accuracy of the information relied upon to negotiate a final resolution of the case. *See* ECF 58, Declaration of Anthony Paronich at ¶14-25 (detailing various phases of litigation and discovery). As this Court's preliminary approval Order recognized, "the Court concludes that the Agreement appears to be the product of adequate investigational efforts." Dkt. No. 31 at *3. This factor favors settlement approval.

> 4.   <u>Plaintiff would face real risks if the case proceeded</u>

Courts "assess the risks of litigation against the certainty of recovery offered by the Settlement" when evaluating the risks of establishing liability. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). Courts recognize that "[l]itigation inherently involves risks" and that regardless of the Plaintiff's perceived strength of a case, liability is "no sure thing." *Wal-Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Flores v. Anjost*, No. 11 CIV. 1531 AT, 2014 WL 321831, at

*5 (S.D.N.Y. Jan. 29, 2014) (quoting *In re Ira Haupt & Co*., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)).

Here, Plaintiff risked losing on the merits. NYLIC steadfastly denied liability for the telemarketing campaign at issue and asserted that it should not be vicariously liable under agency theories. *See Jackson v. Caribbean Cruise Line, Inc*., 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015) (granting motion to dismiss on issue of vicarious liability). In addition, NYLIC was expected to challenge Plaintiff's standing to represent the class in light of both *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). For example, some post-*Gomez* courts have held that even a plaintiff who rejects a settlement offer can have a case dismissed by virtue of an adverse judgment entered by the court. *See, e.g., Leyse v. Lifetime Entm't Servs.,* 171 F. Supp. 3d 153, 155-156 (S.D.N.Y. Mar. 17, 2016), *affirmed in summary order, Leyse v. Lifetime Entm't Servs, LLC,* 2017 U.S. App. 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017)*; but see, Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, No. 13-CV-4577 (KMK), 2017 U.S. Dist. LEXIS 70318, at *48-49 (S.D.N.Y. May 8, 2017) (refusing to permit deposit of funds to moot potential class claims). Similarly, following *Spokeo*, some courts have held that a plaintiff who has received an unsolicited call in violation of the TCPA, without more, has not alleged a sufficient Article III harm. *See, e.g.*, *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256, 1264 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.") A decision from this Court on either of those issues against the Plaintiff could have ended this litigation. Finally, as in any case, there is a substantial risk of losing at trial even if the class is certified. Moreover, even where Plaintiff won on the merits, one or more appeals would

be likely. By agreeing to the proposed settlement, Plaintiff eliminated these concerns. This factor supports final approval.

5. _Establishing a class and maintaining it through trial would not be simple_

The risk of obtaining class certification and maintaining it through trial also supports final approval. Had a settlement not been reached, NYLIC would likely contend that some class members provided consent, and that individualized issues of consent preclude certification. Courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. _Compare, e.g., Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc._, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), and _Versteeg v. Bennett, Deloney & Noyes, P.C._, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number"), _with Agne v. Papa John's Int'l, Inc._, 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Even if Plaintiff succeeded in certifying a class, NYLIC would likely seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). Settlement eliminates this risk, expense, and delay, and as such, supports final approval.

6. _Defendants' ability to withstand a greater judgment is a neutral factor_

The Settlement Agreement provides substantial recovery for the Class Members. Nevertheless, even if NYLIC could afford to pay more, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." _Frank v. Eastman Kodak Co._, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting _Holocaust Litig._, 80 F.

Supp. 2d at 178 n. 9). Under these circumstances, this factor is neutral and does not preclude the Court from approving the final settlement.

> 7. The settlement fund is substantial in light of the possible recovery and the attendant risks of litigation

The determination of whether a settlement amount is reasonable does not involve the use of a "mathematical equation yielding a particularized sum." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483–84 (S.D.N.Y. 2009) (citation omitted). "[T]he dollar amount of the settlement by itself is not decisive in the fairness determination…." *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997). Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972). "Where the settlement provides 'a meaningful benefit' to the class, settlements have been found reasonable." *Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *7 (E.D.N.Y. Apr. 27, 2016) (citation omitted). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable. *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (internal quotation marks and citation omitted).

The $3,350,000 settlement amount provides much more than "a fraction of the potential recovery" to Class Members. Claimants will each receive an average net settlement payment (net of attorneys' fees, costs, service awards, and claims administration fees) of $1,161.67. This per claimant payout vastly exceeds many other court-approved TCPA settlements and represents an

excellent result. *See Manouchehri v. Styles for Less, Inc.*, No. 14-cv-2521 NLS, 2016 WL3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (finally approving TCPA settlement where class members would receive $40 cash or $80 certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc*., No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc*., No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret v. Sharps Compliance, Inc*., No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51). *See also In re Enhanced Recovery Co.*, No. 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014), Dkt. No. 123 at 1 (only injunctive relief for class) and Dkt. No. 124 (settlement granted final approval); *Grant v. Capital Mgmt. Servs.*, No. 10-cv-2471, 2014 U.S. Dist. LEXIS 29836 at *10 (S.D. Cal. Mar. 5, 2014) (injunctive relief only – no monetary relief to the class). Indeed, Class Counsel have compiled 70 TCPA class settlements in federal court, which resulted in an average recovery of $100.98 per class member, which this settlement far exceeds. *See* ECF No. 34-1.

  As detailed above, the percentage of class members who filed claims for recovery in this case is approximately 7%. Such a claim percentage is also indicative of the generally positive

response of class members to the settlement. Many approved TCPA class settlements had much lower claim rates than before the Court, which further illustrates the claim rate here was acceptable. *See Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, No. 1:12-cv-00780, Dkt. No. 69 (N.D. Ill. Oct. 30, 2013) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* No. 1:13-cv-06897, Dkt. No. 41-1 (N.D. Ill. Jan. 15, 2015) (.5% of the class made claims); *Agne v. Papa John's International Inc.*, No. 2:10-cv-01139, Dkt. No. 384 (W.D. Wash. Oct. 8, 2013) (1.6% of the class made claims); *Spillman v. RPM Pizza, LLC*, No. 10-cv-0349, Dkt. No. 241 (M.D. La. May 23, 2013) (less than 1% of the class made claims); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343 (S.D.N.Y. Sep. 8, 2017) has a 6.02% claims rate (*See* ECF No. 294). In sum, the substantial amount of the proposed settlement and the excellent recovery per settlement class member when viewed in light of the attendant risks of litigation weigh in favor of the settlement.

## IV. CONCLUSION

The settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiff respectfully requests that the Court grant final approval to the settlement. A proposed Order is attached as Exhibit 1.

Dated: February 6, 2018         Respectfully submitted on behalf of the Plaintiff,

By:     /s/ *Matthew P. McCue*           

Matthew P. McCue
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Anthony Paronich
Email: anthony@broderick-law.com
Edward A. Broderick
Email: ted@broderick-law.com
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (508) 221-1510

Kim E. Richman
Email: krichman@richmanlawgroup.com
RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

*Attorneys for Plaintiff and the Settlement Class*

<u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on February 6, 2018, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

counsel of record.

/s/ *Matthew P. McCue*           
Matthew P. McCue